# THE STEAMER ECLIPSE, BRAITHWAITE, Claimant.[1]

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF DAKOTA.

No. 310. Argued April 29, 1890. — Decided May 19, 1890.

A court of admiralty has no equity power to wind up a trust concerning a licensed vessel, or to enforce an alleged contract of sale of it.

When an intervener in an admiralty suit *in rem* seeks a remedy concerning the vessel which is not maritime in its nature, the court is without jurisdiction over his claim, and the intervention should be dismissed.

A power was given to sell a vessel then lying in a dangerous position locked up in ice, in care of the master, who was part owner, for a specified sum : *Held*, to have been executed with reference to the then condition of the vessel, and not to apply to a sale purporting to be made under it after it had been brought by the master to a port of safety, and not to warrant a conditional sale after extrication, dependent upon the amount of damage which it might be found to have suffered.

A vessel was conveyed to two trustees, one of whom was the master, in equal shares, to hold as trustees for the benefit of all the owners, *cestuis que trust*. *Held*, that the master was half-owner of the legal title, and could not be removed under Rev. Stat. § 4250 on the application of *cestuis que trust*, claiming to be a majority of the equitable owners.

Robinson, Rea & Co., Kay, McKnight & Co., A. W. Cadman & Co., and Joseph McC. Biggert filed their libel in admiralty in the District Court of the Third Judicial District of the territory of Dakota, April 7, 1881, against the steamboat Eclipse, her tackle, apparel and furniture, and against all persons intervening for their interest therein, in a cause of possession, civil and maritime, alleging:

"First. That they are the majority of the owners of the steamboat Eclipse, her tackle, apparel and furniture; and,

---

[1] The docket title of this case is William Rea and Geo. F. Robinson, Copartners as Robinson, Rea & Co.; J. C. Kay and Woodruff McKnight, Copartners as Kay, McKnight & Co.; A. W. Cadman and ——— Cadman, Copartners as A. W. Cadman & Co.; Joseph McC. Biggert; and Joseph Leighton and Walter B. Jordan, Copartners as Leighton & Jordan, Appellants *v.* The Steamer " Eclipse," William Braithwaite, Claimant.

being such owners, on or about the 10th day of March, 1881, appointed one William Braithwaite master of said vessel, to navigate and sail her for them, at the wages agreed upon between him and the said owners, and the said William Braithwaite continued to be such master until the 4th day of April, 1881, when the libellants removed him as master and appointed another as master in his place.

" Second. That when the new master so appointed by libellants went on board said vessel by their orders, to enter upon his duties as such master, the said William Braithwaite refused to give up the possession or the papers of said vessel to the said master or to the libellants, who have demanded the same, to the great damage of the libellants."

Process was prayed against the vessel and Braithwaite, and was issued accordingly, returnable on the first Tuesday of June then next.

On the 15th of April, 1881, Braithwaite intervened as a claimant of the boat as "trustee, one of the owners, and master," averring that he was "managing owner and master of said steamer, and is entitled to the possession and command thereof, and that no other person is entitled to the possession or command thereof."

The libel was amended by stating that "the said Robinson, Rea & Co. owns a twenty-five hundred-dollar interest in said steamboat; the said Kay, McKnight & Co., four hundred and fifty dollars' interest in said steamboat; the said Joseph McC. Biggert, a twenty-five hundred-dollar interest in said steamboat; the said A. W. Cadman & Co., a one hundred-dollar interest in said steamboat; that the only other person having an interest in said steamboat is Wm. Braithwaite, who owns a twenty-five hundred-dollar interest in said steamboat."

Braithwaite filed an answer and exceptions on the 6th of May.

On the 4th of June the marshal returned that he had attached the boat under the process on the day it was issued, and that on the same day one Joseph Leighton put in a claim to the boat, and with the consent of the libellants, and upon Leighton's executing a stipulation of the value of $12,000, that

being the amount agreed upon between him and libellants, he had delivered the boat to Leighton. On the 25th of May, 1881, Leighton and Jordan filed their claim in intervention, as purchasers under a bill of sale, bearing date March 31, 1881, and prayed for a decree directing Braithwaite to execute a bill of sale of the Eclipse, and to deliver it and the papers of the steamboat to them, and on his refusal that all his interest in the boat be transferred to them, and for costs, and such other relief as a court of admiralty is competent to give.

The cause was heard upon the pleadings and proofs, and the District Court made its findings of fact and conclusion of law as follows :

"First. That the steamer Eclipse at the time of the commencement of this action was within the Third Judicial District of Dakota Territory.

"Second. That on February 4th, 1880, the claimant, William Braithwaite, and libellants, with the exception of Joseph McC. Biggert, made and entered into an agreement in writing as set forth in the fourth allegation in claimant's answer.

"Third. That subsequent to the execution of that agreement by the claimant a further clause was added substituting the name of Joseph McC. Biggert for that of John D. Biggert, which was signed by all parties to the agreement except the claimant.

"Fourth. That subsequent to the execution of the agreement the parties paid in eight thousand and fifty dollars and no more, in amounts as follows :

| | |
|---|---:|
| Capt. W. Braithwaite. | $2500 00 |
| John D. Biggert. | 2500 00 |
| Robinson, Rea & Co. | 2500 00 |
| Cadman & Co. | 100 00 |
| Kay, McKnight & Co. | 450 00 |

"Fifth. That in pursuance of that agreement the claimant went from Pittsburgh, Pa., to Bismarck, D. T., in February, 1880, to be present when the said steamer Eclipse should be offered for sale by the U. S. marshal, and on the 18th day of

February, 1880, the United States marshal sold said steamer at public auction at the port of Bismarck, and claimant bid her in under and in pursuance of the agreement between him and libellants for the sum of eight thousand five hundred and twenty-five dollars.

"Sixth. That claimant used in purchasing said steamer all of the money paid in by the parties to said agreement, viz., eight thousand and fifty dollars, and raised the balance of the purchase price, viz., four hundred and seventy-five dollars, on the credit of the said steamer, which was afterwards paid out of her earnings.

"Seventh. That the claimant, Wm. Braithwaite, and John D. Biggert, negotiated the purchase, and the marshal made the bill of sale to the claimant and John D. Biggert, as trustees.

"Eighth. That the claimant, William Braithwaite, took possession of said steamer Eclipse, as master, under and in pursuance of the said written agreement between him and libellants, and so continued in possession as master under said written agreement until he was removed by the United States marshal, by virtue of the writ issued in this case.

"Ninth. That immediately after the United States marshal took possession of the said steamer he removed the claimant and delivered the possession of the same to interveners, without any order to do so from this court.

"Tenth. That said steamer was run by claimant during the navigation season of 1880 under said written agreement and earned eight thousand dollars, which went into the hands of the financial agent under said agreement, and the same has not been apportioned or distributed.

"Eleventh. That on February 2d, 1881, libellants and claimant signed 'Exhibit A' of the intervention and petition of Joseph Leighton and Walter B. Jordan. At that time said steamer was lying in the Missouri River, a little below Fort Benton.

"Twelfth. That the committee named in said exhibit made a conditional agreement with Charles Batchelor, agent for Joseph Leighton, to sell said steamer for eleven thousand five hundred dollars, if she should not be damaged to exceed five hundred dollars.

"Thirteenth. That on April 1st, 1881, a bill of sale was made for said steamer by libellants transferring her to interveners, but was not delivered, and the interveners had not paid any money thereon, and the claimant never signed said bill of sale, but refused to sign the same, and notified interveners and the committee that his interest in said steamer was not for sale, before any part of the purchase-money had been paid by the interveners, amounting to $2500.00, before the commencement of this action, — was paid after they were notified that the claimant would not sell his interest in said steamer.

"Fourteenth. That the interveners are not the sole owners of the said steamer, but the claimant, William Braithwaite, was at the time of the commencement of this action the owner of one-half interest therein, and part owner under and by virtue of the written agreement made with libellants.

"Fifteenth. That at the time of the commencement of this action libellants were not the owners of a majority interest in said steamer.

"Sixteenth. That there was due to the claimant, under the written agreement with the libellants, the sum of eight hundred dollars for wages at the time of the commencement of this action, and that no money whatever has been paid or tendered to him by any of the parties to this action.

"As a conclusion of law I find —

"1st. That the claimant, Wm. Braithwaite, is entitled to the possession of the steamer Eclipse."

The agreement referred to in the second finding is as follows:

"Articles of agreement made and concluded the 4th day of February, in the year of our Lord eighteen hundred and eighty, between W. Braithwaite and John D. Biggert, parties of the first part, and Robinson, Rea & Co., Kay, McKnight & Co., and Cadman & Co., of the city of Pittsburgh, county of Allegheny, State of Pennsylvania, parties of the second part, witnesseth: That whereas the steamboat 'Eclipse' is now hopelessly involved in debt, and the said parties of the second part being creditors of said steamboat, and the said

steamboat is about to be forced to marshal's sale, it being a well known and recognized fact the owners of said boat are unable to meet the indebtedness and prevent such sale, the parties hereto, fearing a sacrifice, to protect their several interests, prevent such a sacrifice, and form a fund for bidding up (in) said boat, and afterwards, if knocked down to them, to provide a working capital to manage and run said steamboat, covenant and agree as follows:

"First. That each of said parties shall contribute into a general fund the respective amounts set opposite their names, viz:

| | |
|---|---:|
| Capt. W. Braithwaite | $2500 |
| John D. Biggert | 2500 |
| Robinson, Rea & Co. | 2500 |
| Cadman & Co. | 100 |
| Kay, McKnight & Co. | 450 |

"Which several amounts are to be paid in cash by the respective parties to said parties of the first part in case said steamboat is purchased by them as herein provided, so much thereof as may be necessary to be used for paying such of the bid as may be necessary to be paid in cash and the remainder to be used as working capital.

"Second. That in addition to said cash fund the second parties are to contribute as capital the amounts of their respective claims against said steamboat, and in case said steamboat is bought by the parties hereto their claims are not to be paid at once, but to be receipted for by them and afterwards paid as hereinafter provided for.

"Third. When said steamboat is put up at marshal's sale the same is to be bid by said parties of the first part to such an amount as a majority in interest of said amount, $10,000.00, may determine, and be put in the name of W. Braithwaite and John D. Biggert, as trustees, and be held by them thereafter as such trustees for the following uses and purposes: First, that the same be managed and run in the interest of all the parties hereto, said William Braithwaite to act

as captain and John D. Biggert as financial agent; the said Braithwaite to receive a salary of $150 per month and said John D. Biggert to receive a salary of $100 per month during the time she is so run in the interest of the parties hereto.

"Fourth. Out of the earnings of said steamboat the respective claims of the said parties of the second part are first to be paid, and, secondly, the full amount of their respective portions of said $10,000 advancement is to be paid, and when said parties of the second part are fully paid then this trust shall cease and determine, and the said steamboat shall remain wholly to the use and benefit of the said Wm. Braithwaite and J. D. Biggert, their executors, administrators and assigns."

Exhibit "A," referred to in the eleventh finding, is as follows:

"PITTSBURGH, PENN., *February 2d,* 1881.

"We, the undersigned creditors and trustees of the steamer Eclipse, hereby appoint William Rea, John D. Biggert, and J. C. Kay our committee to effect sale of said steamer, granting unto them or a majority of them power to accept any offer which they may receive for the purchase of the steamer, it being expressly understood that they shall not accept any offer of less than eleven thousand five hundred dollars cash or equivalent in approved paper."

Thereupon judgment was rendered dismissing the libel, and also the intervening petition, with costs to be taxed against the libellants and interveners, respectively, and ordering the marshal to deliver the possession of the steamboat Eclipse, her tackle, apparel and furniture, to the claimant, William Braithwaite.

This judgment was affirmed by the Supreme Court of the Territory, and the cause brought to this court by appeal.

*Mr. W. Hallett Phillips* and *Mr. George W. Guthrie* for plaintiffs in error.

*Mr. J. G. Bigelow* for Braithwaite, claimant.

Mr. Chief Justice Fuller, after stating the case as above reported, delivered the opinion of the court.

Circuit Courts, in deciding causes of admiralty and maritime jurisdiction on the instance side of the court, are required to find the facts and the conclusions of law upon which their judgments and decrees are rendered, stating them separately; and we are limited, in reviewing such judgments and decrees, to a determination of the questions of law arising upon the record, and to such rulings of the court, excepted to at the time, as may be presented by a bill of exceptions, prepared as in actions at law. 18 Stat. 315; *The Gazelle*, 128 U. S. 474, 484. And this judgment of the Supreme Court of Dakota Territory is subject to review in the same manner and under the same regulations. Rev. Stat. § 702.

By the purchase of the steamer on the 18th of February, 1880, under the agreement dated the fourth day of that month, Braithwaite and Biggert acquired the legal title to be held in trust for the payment to the "parties of the second part," Cadman & Co., Robinson, Rea & Co., and Kay, McKnight & Co., of their claims as creditors and their advances to assist Braithwaite and Biggert to make the purchase.

When this was accomplished, Braithwaite and Biggert were to remain equal owners of the boat freed from the encumbrance. Joseph McC. Biggert seems to have been substituted for John D. Biggert, but as our conclusion is reached without regard to that circumstance, they will be treated as one. The agreement provided that the steamer was to be commanded by Braithwaite, and she was accordingly run by him during the navigation season of 1880, and earned eight thousand dollars, which went into the hands of Biggert, who was financial agent under the agreement, but this money had not been apportioned and distributed when the libel was filed.

On the 2d of February, 1881, Braithwaite and Biggert, the trustees, and Robinson, Rea & Co., Cadman & Co. and Kay, McKnight & Co., the creditors, by a written memorandum signed at Pittsburgh, appointed Rea, Biggert and Kay a committee to effect the sale of the steamer, with power to accept

any offer of not less than eleven thousand five hundred dollars cash, or the equivalent in approved paper. At this time the steamer was lying in the Missouri River, a little below Fort Benton; but it appears from the interveners' petition, that on or about April 1 she had been released from the ice in which she had wintered, and been brought down to Bismarck by her master, Braithwaite. The court found that the committee made a conditional agreement with Leighton's agent to sell the steamer for eleven thousand five hundred dollars, if she should not be damaged to exceed five hundred dollars; that a bill of sale was made by libellants April 1, 1881, transferring the boat to the interveners, but it was not delivered or any money paid thereon; that Braithwaite refused to sign it and notified the interveners and the committee that his interest was not for sale, after which the interveners paid the sum of two thousand five hundred dollars; that Braithwaite was the owner of one-half interest in the steamer when the action was commenced; and that eight hundred dollars was due to him for wages under the written agreement with the libellants, no part of which had been paid or tendered to him by any of the parties.

The memorandum of February 2d was obviously entered into in view of the situation of the Eclipse as she lay locked up in the ice just below Fort Benton, and not as she was when safe in the port of Bismarck, and the authority vested in the committee to effect a sale was limited to the acceptance of an offer of not less than a certain amount in cash or its equivalent. A contract for a sale conditioned on how much the vessel might turn out to have been damaged by her environment and extrication therefrom was not within the power conferred, which contemplated only a sale for a sum certain at the risk of the buyer, and did not embrace an executory contract dependent on a contingency. We are of opinion, upon the facts found, that nothing had been done which operated to divest the legal title, and that when the libel was filed that title was in Braithwaite and Biggert, and the interest of the interveners and of Biggert's co-libellants was equitable merely. Braithwaite was the legal owner of one-half and was the

master in possession. Of that possession he could not be deprived on the ground set up in the libel, that the libellants were a majority of the owners, for such was not the fact; and, moreover, he was not only part owner and master, but by the written agreement, which was still subsisting, was entitled to such possession as master, and therefore not liable to removal under section 4250 of the Revised Statutes, which provides that "any person or body corporate having more than one-half ownership of any vessel shall have the same power to remove a master, who is also part owner of such vessel, as such majority owners have to remove a master not an owner," but that the section shall not apply "where there is a valid written agreement subsisting, by virtue of which such master would be entitled to possession."

So far as the creditors and interveners were concerned, if the former desired to wind up the trust, or the latter to enforce an alleged contract of sale, which is indeed what is asked by this intervention, they should have resorted to a different tribunal. While the court of admiralty exercises its jurisdiction upon equitable principles, it has not the characteristic powers of a court of equity. It cannot entertain a bill or libel for specific performance, or to correct a mistake, *Andrews* v. *Essex Ins. Co.*, 3 Mason, 6, 16; or declare or enforce a trust or an equitable title, *Ward* v. *Thompson*, 22 How. 330; *The Amelia*, 6 Ben. 475; *Kellum* v. *Emerson*, 2 Curtis, 79; or exercise jurisdiction in matters of account merely, *Grant* v. *Poillon*, 20 How. 162; *Minturn* v. *Maynard*, 17 How. 477; *The Ocean Belle*, 6 Ben. 253; or decree the sale of a ship for an unpaid mortgage, or declare her to be the property of the mortgagees and direct possession of her to be given to them. *Bogart* v. *The John Jay*, 17 How. 399. The jurisdiction embraces all maritime contracts, torts, injuries or offences, and it depends, in cases of contract, upon the nature of the contract, and is limited to contracts, claims and services purely maritime, and touching rights and duties appertaining to commerce and navigation. *People's Ferry Co.* v. *Beers*, 20 How. 393, 401. There was nothing maritime about the claims of the interveners, and the intervention was properly dismissed for want of jurisdiction over the subject matter.

The opinion of the Supreme Court of Dakota by Church, J., will be found reported in 30 N. W. Rep. 159, and deals with the facts in more detail than we have been at liberty to do.

We agree with the results arrived at by that court and its judgment is therefore *Affirmed.*