### SEA INS. CO. v. ABOUT 500 TONS OF STEEL RAILS et al.

(District Court, E. D. Michigan, S. D. August 2, 1911.)

#### No. 5,399.

ADMIRALTY (§ 13*)—JURISDICTION—SALVAGE CONTRACT.

Respondent contracted to salve a sunken steamer and her cargo, consisting of steel rails and coal, for $39,000, with the option to the owners to pay 40 per cent. of the salved value. After a considerable part of the rails had been raised and placed on a dock, their insurer, also having authority from the owner, brought suit to require such rails to be delivered to it that they might be put in condition for use. *Held*, that a court of admiralty had jurisdiction to grant such relief, although the salvage contract was not fully performed, and that under the peculiar circumstances of the case delivery of such rails would be decreed on the giving of a bond by libelant to protect the rights of respondent, the rails to be appraised before delivery.

[Ed. Note.—For other cases, see Admiralty, Dec. Dig. § 13.*

Admiralty jurisdiction as to matters of contract, see notes to The Richard Winslow, 18 C. C. A. 347; Boutin v. Rudd, 27 C. C. A. 530.]

In Admiralty. Suit by the Sea Insurance Company against about 500 tons of steel rails and the Great Lakes Towing Company. Decree for libelant.

Warren, Cady & Ladd, for libelant.

Goulder, Day, White & Garry and Frank H. & George L. Canfield, for respondents.

ANGELL, District Judge. The steamer Erwin L. Fisher was sunk in collision in the Detroit river on May 4, 1911. Her cargo consisted of 700 tons of steel rails, whose sound value was about $34.50 per ton, and about 1,600 tons of coal. After the loss, all persons con-

cerned in the hull and cargo appeared to have put their interests in the hands of one Parry Jones of Cleveland, who represented the Salvage Association of London. Parry Jones on May 5th requested the Great Lakes Towing Company to make a tender to salve the Fisher and her cargo. On the 6th that company proposed to commence salvage operations as soon as possible and to "deliver hull and cargo at the dock of some repair plant in the city of Detroit designated by you" (Parry Jones) "for the sum of thirty-nine thousand dollars, with option to owners or underwriters to pay forty per cent. of the appraised value of all property saved." This proposal appears to have been accepted. The Great Lakes Company began, and is still prosecuting, the work of raising and salving the hull and cargo.

In the course of this work a large number of rails were raised some weeks ago, and are now on the dock of the Great Lakes Engineering Works in Ecorse. It is understood that $5 per day is being charged for their storage. It is claimed on the one hand that these rails amount to 500 tons, and on the other to 200 tons.

Libelant is the insurer of these rails. The owner of them is the National Tube Company. Libelant makes a showing under oath that it is authorized by the owner to take measures to recover the rails; that it has the bill of lading for the rails; that after the loss it agreed with the owner to recover and to redeliver to it the rails in order that the same might be reconditioned; and that under this agreement it was authorized to take possession of the rails, and is the bailee of the same for the purpose stated.

It filed its libel against 500 tons of the rails for the possession thereof, and offered to file such security as might be ordered for the protection of the Great Lakes Towing Company.

It thereupon moved for an order for the delivery by the marshal of the rails seized under process issued upon the filing of the libel. An order to show cause was issued.

An answer has been filed by the Great Lakes Towing Company to the libel, and also an answer to the order to show cause.

The matter was fully argued, and briefs have been filed. In some aspects the case appears novel. No decided case has been called to my attention which deals with a situation such as is presented here. The briefs and arguments, and authorities cited, have had consideration. It seems more for the interest of the parties to dispose of the matter now and to state my conclusions briefly upon the points argued than to delay to discuss at length the many cases relied on by counsel. I have reached the following conclusions:

(1) That, under the peculiar circumstances, and in view of the relation of respondent under its contract to these rails, and to the owner, and to libelant, the court has jurisdiction of the proceedings, in spite of the fact that libelant has no legal title to the rails, but only a right, conferred by the owner, to the possession of them. That the doctrine of The Eclipse, 135 U. S. 599, 10 Sup. Ct. 873, 34 L. Ed. 269, and The Ives, Newb. 205, Fed.Cas. No. 7,958, ought not to be extended to cover this case.

(2) That, under the circumstances of this case, a bond may properly take place of the res.

(3) That, if an adequate bond is filed, the respondent, in view of all the facts, will suffer no harm by being deprived, of the possession of the rails now on the dock, although the salvage service under the contract is not completed.

(4) That the existing contract will not be interfered with, nor will a new contract be made for the parties, if the rails now on the dock are delivered to the libelant after performance of such an order as is about to be indicated.

If after all the rails and the coal are on the dock, and the hull is at the repair yard, the respondent is paid $39,000, it will have no interest in the value of the property salved. If it is not then paid that amount, it will have an interest in the proper valuation of the property. However the respondent may be paid, the owner of the hull and his underwriters, the owner of the coal and his underwriters, have an interest in the proper valuation, not only of the rails now on the dock, but of the mass of the property salved.

The valuation of the property which may yet be saved in no way depends on the value of the property now on the dock. Respondent's rights will not be affected by the removal of the last-named rails, if that value is now determined by appraisal and it be secured by bond against loss arising out of present removal; nor is it perceived that, if such appraisal is had presently, the rights of the others interested in the hull and cargo will be injuriously affected, provided they are brought into the cause and have a standing in it at the time of the appraisement.

Appraisement may, as above suggested, be of no importance to the respondent, if $39,000 is paid; but it must inevitably be of importance to the other interests, and it may be of interest to the respondent. At the end of the work an appraisement would be necessary. To do a part of the appraising now can harm no interest, and may be of advantage to the libelant and the owner of the rails. It seems to me that such appraisement on the dock is entirely practicable. It can be made without committing the owner of the hull, coal, or rails, and their respective underwriters, to a settlement with the respondent on the percentage basis. Clearly, the libelant cannot elect for all those interested with it in the salvage contract as to how the payment to respondent shall eventually be made. It should be understood that the appraisement is to be made without prejudice to the rights of the parties interested in the hull and cargo hereafter to determine whether or not to pay the respondent the $39,000. If, however, it shall hereafter be determined to pay the respondent on the basis of 40 per cent. of the value of the property salved, then the value determined by such appraisement of the rails on the dock must bind all parties in interest.

This appraisement should be made as called for by the contract by fair implication, in case the settlement is to be made on the percentage basis. If such appraisement is made, a bond in double the amount of the appraised value of the rails on the dock as determined must be executed by the libelant, with adequate sureties, for the full protec-

tion of the respondent. After delivery of such bond, it may have possession of the rails now on the dock.

It is obvious, from what has been said, that in my judgment an appraisement cannot properly be had until the owner of the hull and the owner of the cargo, and their respective underwriters, are brought before the court in some proper mode, and that these persons should have an opportunity to take part, so far as is appropriate, in the appraisement.

If, after these parties are brought in, the libelant chooses to proceed in accordance with this opinion, it may do so; otherwise its application for delivery of the rails must be denied.