## THE GENERAL LINCOLN.

District Court, D. Maryland. February 2, 1928.

### No. 1528.

**1. Seamen ⊂⊃27(12)—Doubt regarding whether mate, filing claim for wages, in ship foreclosure libel, had received wages in full, should be resolved in favor of seaman (Ship Mortgage Act 1920, § 30, subsec. M [46 USCA § 953]).**

In libel for foreclosure and sale of ship mortgaged under Ship Mortgage Act 1920, § 30, subsec. M (46 USCA § 953; Comp. St. § 8146¼nn), doubt regarding question whether seaman, filing claim for services as mate, had been paid in full, should be resolved in favor of seaman, especially in view of his preferred position in admiralty.

**2. Admiralty ⊂⊃34—State statute should be followed in admiralty in determining whether seaman's claim for wages in ship mortgage foreclosure libel was barred (Ship Mortgage Act 1920 [Comp. St. §§ 8146¼jjj–8146¼rr]).**

Seaman's claim for wages as mate, filed in libel for foreclosure and sale of ship mortgaged under Ship Mortgage Act 1920 (Comp. St. §§ 8146¼jjj–8146¼rr), *held* not barred by laches, where state statutory period had not expired, since state statute of limitations should be followed in admiralty in such case.

**3. Seamen ⊂⊃27(9)—Seaman held entitled to priority in payment for services as mate in distribution of proceeds in registry of court from sale of steamer under mortgage foreclosure; "wages of crew" (Ship Mortgage Act 1920, § 30, subsec. M [46 USCA § 953]).**

Seaman *held* entitled to priority in payment of claim for services as mate, in distribution of proceeds in registry of court arising from sale of ship under foreclosure, since claim was preferred maritime lien under Ship Mortgage Act 1920, § 30, subsec. M (46 USCA § 953; Comp. St. § 8146¼nnn), being "for wages of crew of vessel."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Wages.]

**4. Seamen ⊂⊃27(1)—Watchman held not entitled to lien for services after vessel was withdrawn from navigation where he remained on vessel without agreement respecting wages (Ship Mortgage Act 1920 [Comp. St. §§ 8146¼jjj–8146¼rr]).**

Watchman *held* not entitled to maritime lien, giving him priority in distribution of proceeds of sale of ship mortgaged under Ship Mortgage Act 1920 (Comp. St. §§ 8146¼jjj–8146¼rr) for services on vessel withdrawn from navigation, where he signed receipt in full for wages, although he admitted that he then knew there was still due him $15, and thereafter remained on vessel without having any express agreement with any one respecting wages.

**5. Wharves ⊂⊃18—Where ship was withdrawn from navigation, there could be no maritime. lien for wharfage (Ship Mortgage Act 1920 [Comp. St. §§ 8146¼jjj–8146¼rr]).**

Where ship mortgaged under Ship Mortgage Act 1920 (Comp. St. §§ 8146¼jjj–8146¼rr) was entirely withdrawn from navigation, there could be no maritime lien for wharfage, entitling claimant to priority in distribution of proceeds in registry of court arising from sale of ship on foreclosure.

In Admiralty. Libel by J. Fred Nauman for foreclosure and sale of the mortgaged steamer General Lincoln, in which others intervened. Decree in accordance with opinion.

Henry L. Wortche, of Baltimore, Md., for libelant.

John H. Skeen, S. K. Smith, and Lewis Hochheimer, all of Baltimore, Md., for intervening libelants.

WILLIAM C. COLEMAN, District Judge. This case involves the question of priorities in the distribution of proceeds now in the registry of this court arising from the sale of the steamer General Lincoln under admiralty process.

The libelant is the assignee of a preferred mortgage under the Ship Mortgage Act of 1920 (Comp. St. §§ 8146¼jjj–8146¼rr). The Bay Shore Brighton Excursion Company, owner of the steamer General Lincoln, executed this mortgage for $5,000 upon the vessel to the Claiborne-Annapolis Ferry, Inc., on June 4, 1924. On December 5, 1925, the mortgage was assigned to libelant, who, on March 4, 1927, filed his libel for foreclosure and sale. Numerous intervening libels were thereupon filed, and on April 12, 1927, the vessel was sold, leaving in the registry for distribution the net sum of $896.21. It is admitted by all parties in interest that the mortgage is in full compliance with the requirements of the Ship Mortgage Act of 1920 (41 Stat. 1004). It is further agreed that $300 out of the fund shall be paid to the intervening libelant Hamlin, a passenger on board the vessel, for personal injuries incurred thereon on June 21, 1925, in view of the preferred position of such a tort claimant under the Ship Mortgage Act.

The precise question, therefore, which is now before the court, is whether the libelant's mortgage is entitled to priority with respect

to the entire balance of the fund, after payment of the above, or whether one or more of the following claimants who have filed intervening libels, are entitled to preference over the mortgage:

(1) Eugene Pinder, for services as mate ...................... $  50.00
(2) Robert Cathell, for services as watchman .................. 693.00
(3) Redman Vane Shipbuilding Company, for wharfage........... 675.00
(4) Baltimore Ship Repair Company, for repairs ................. 36.10
(5) Kogan Printing Company, for merchandise and printing...... 124.75
                                    ————
                                    $1,578.85

The claims will be considered in the order in which they appear above.

[1-3] 1. This claim is for $50, balance due on account of the mate's wages during the year 1924. The mortgagee admits that this claim should have priority if, in fact, it is still due; but the mortgagee has placed in evidence a check, dated January 8, 1925, for $38, which was drawn to the mate's order by one of the stockholders of the company owning the steamer, bearing the notation "in full up to date first mate steamer General Lincoln," and which was cashed in due course by this claimant. On the other hand, the mate claims that, at the time he received the check, there was $88 in fact due him, and further that the notation on the check was unauthorized, and not upon it when he received the check, all of which is denied by the owner. Upon close examination of the check, the court is not entirely satisfied that the notation was not added at some time subsequent to the issuance of the instrument. Therefore the court feels that any doubts should be resolved in favor of the seaman, especially in view of his preferred position in admiralty.

Regarding the matter of laches, although the claim accrued in 1924, the court does not feel that there has been a sufficient lapse of time to bar the claim. The Maryland three-year statutory period (Code Pub. Gen. Laws 1924, art. 57, § 1) has not yet expired, and, while such is not conclusive in admiralty, it is at least a reasonable measure, and should be followed in such case. The Fort Gaines (D. C.) 24 F.(2d) 436, decided January 25, 1928, and cases therein cited. Therefore this claim will be allowed and awarded priority, being a preferred maritime lien under section 30, subsection M, of the Ship Mortgage Act (46 USCA § 953; Comp. St. § 8146¼nnn), being "for wages of the crew of the vessel" as therein provided.

2. The claim of the watchman is for $175, unpaid balance of wages, at the rate of $60 per month, from August, 1926, to March 5, 1927. An additional claim for subsistence was filed by this claimant, but later abandoned. It appears that this person was employed by the owner of the vessel in 1925 as a watchman, the vessel at the time having been definitely withdrawn from navigation and laid up at the wharf of Redman-Vane Shipbuilding Company, one of the other claimants herein. This latter company paid the watchman his wages until June, 1926. Thereafter, and until December 24, 1926, his wages were paid by the wife of the present libelant. On the latter date, the watchman signed a receipt in full, although admitted that he then knew there was still due him $15 on August, 1926, wages. Thereafter he remained on the vessel until it was seized by the marshal, without having any express agreement with any one respecting wages.

[4] Under all of the above circumstances, the court concludes that this claimant has no maritime lien. That services of a watchman on a vessel withdrawn from navigation are not entitled to such a lien is well settled. Gonzales v. U. S. Shipping Board (D. C.) 3 F.(2d) 168; The Fortuna (D. C.) 206 F. 573; The James T. Furber (D. C.) 157 F. 127; The Sirius (D. C.) 65 F. 226. See, also, The Herdis (D. C.) 22 F.(2d) 304.

[5] 3. The claim for wharfage is for the period from August 24, 1926, to April 24, 1927, at $75 per month, a total of $675, less $100, which was paid by the marshal at the time the vessel was sold. This claim is resisted on the ground that during the period in question the libelant was in lawful possession of the vessel, and that he personally contracted for these wharfage services, paying the bills himself until August, 1926. It appears that the arrangements for wharfage were made by the owner of the vessel on September 25, 1925, and that the owner paid for same until July, 1926, after which time the libelant's wife paid certain sums on account, and the libelant himself promised to make further payment. But the further and controlling fact appears that the vessel was, during the period for which the present claim is made, entirely withdrawn from navigation. Under such circumstances, the law is clear that there can be no maritime lien. The Andrew J. Smith (D. C.) 263 F. 1004; The C. Vanderbilt, 86 F. 785. See, also, the William Leishear (D. C.) 21 F.(2d) 862.

The case of New York Dock Co. v. Poznan, 274 U. S. 117, 47 S. Ct. 482, 71 L. Ed. 955, is urged as authority for allowance of this claim, but there the situation was quite

different. The service accrued after the vessel was placed in custodia legis. In the present case, the service accrued before such took place. In the Poznan Case, therefore, the allowance was made, not as a maritime lien, or as an exception to the general doctrine, but rather as incident to the equitable administration of funds under the court's control. This is quite clear from the language of the court (page 122 [47 S. Ct. 484]):

"We need not inquire here into the exact limits of the powers of courts of admiralty to administer equitable relief as distinguished from that peculiar to the courts of admiralty. This is not a suit, as the court below seemed to think, for the enforcement of· an equitable lien. The court of admiralty is asked, in the exercise of its admiralty jurisdiction, to administer the fund within its custody in accordance with equitable principles as is its wont. Cf. United States v. Cornell Steamboat Co., 202 U. S. 184, 194, 26 S. Ct. 648, 50 L. Ed. 987; The Eclipse, 135 U. S. 599, 608, 10 S. Ct. 873, 34 L. Ed. 269; Benedict, Admiralty [5th Ed.] § 70. It is defraying from the proceeds of the ship in its registry an expense which it has permitted for the common benefit and which, in equity and good conscience, should be satisfied before the libelants may enjoy the fruits of their liens."

The two remaining claims, namely, those for repairs to the vessel and the printing and merchandise account, ordered on her behalf, are disallowed because of failure of proof; it appearing that they have in effect been abandoned.

A decree will therefore be signed in accordance with this opinion, namely, the mortgage claim is granted the entire balance of the fund, after deduction of the first of the claims herein considered and the tort claim, which has been conceded a preference by agreement.