## SLAVIN v. PORT SERVICE CORPORATION.

### No. 8324.

Circuit Court of Appeals, Third Circuit.
Argued June 21, 1943.

Decided Oct. 7, 1943.

Rehearing Denied Nov. 19, 1943.

James H. Molloy, of Philadelphia, Pa., for appellant.

Harry Fischer, of Philadelphia, Pa. (Illoway & Fischer, of Philadelphia, Pa., on the brief), for respondent.

Before MARIS, JONES and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

Clarence C. Fowler claimed a lien of $1,082.50 against the proceeds of a sale of the S. S. Betterton, a vessel owned by a corporation in receivership in the District Court for the Eastern District of Pennsylvania. The vessel was sold by order of the court and all claims were relegated to the proceeds and referred to a special master. The special master found that Fowler was entitled to but $187.60 and recommended that he be awarded priority in that amount. The court confirmed the special master's report and dismissed exceptions. Fowler has appealed.

It is undisputed and the special master found that Fowler was employed on the S. S. Betterton from May 22, 1940, to February 26, 1941, that he received in part payment for wages and subsistence $306.50 and that a balance is still due him. The dispute is as to the amount of the balance, Fowler claiming $1,082.50, whereas the special master awarded him but $187.60. The difference is due to a dispute as to the terms of the agreement of employment. Fowler testified that he was employed by C. K. West, general manager of the corporation to which the S. S. Betterton was chartered, as an engineer at $30 a week and subsistence at 70 cents a day. The only other witness whose testimony sheds any light upon the terms of hiring was C. K. West. The significant portions of his testimony are set out in a footnote.[1]

[1] "Q. Who employed Fowler? A. I did." * * * "Q. He was employed as what? A. That's what I was trying to explain, he was—he requested me to be allowed to sleep on the boat, and I said no. Then

There were at least three possible findings the court could fairly have made from the evidence. It could have found that the $30 a week wage rate and 70 cents a day subsistence allowance were to continue so long as Fowler was employed on the S. S. Betterton. It could have found that the wage rate was to be $30 a week for 30 days and $7 a week thereafter either with or without subsistence for the entire period. It could have found that there was no meeting of the minds as to any part of the period of employment after the expiration of 30 days, Fowler believing the rate thereafter to be $30 a week and subsistence and West assuming that it would revert to $7 a week. What the court did find, however, was that the agreement was for $30 a week for only such period as the vessel was in operation, that thereafter Fowler's engagement as engineer ceased and he became a watchman at $7 a week. It accordingly concluded that he was entitled to but one week's pay at $30 because the S. S. Betterton was in operation for only one week and to pay for the remaining 39 weeks at $7, together with subsistence at 70 cents a day for the entire period.

We can find no support in the evidence for a finding that there was an agreement that Fowler should be entitled to engineer's pay only during such time as the vessel was in actual operation and should revert to watchman's pay immediately thereafter. Since it is clear that this finding was erroneous, the order based upon it cannot stand.

The court's conclusion that Fowler was entitled to a lien for the entire period is difficult to reconcile with its finding that for part of the period Fowler was merely a watchman. If Fowler was employed as an engineer he is entitled to a seamen's lien upon the vessel or the proceeds.[2] This is available to him if he was ready and willing to perform the duties for which he was engaged even though the services were not actually rendered because of the idleness of the vessel.[3] A maritime lien for wages has priority over liens of other types of creditors.[4] Had the court concluded that Fowler was engaged as an engineer for the entire period its order for the payment of his claim as a priority lien would be justified. How-

---

finally the man that we had there as watchman, he got another job, and the boat was laying out there, and when he heard that, he came to me and he asked me if he couldn't take his job and I said 'Yes'. That's when he started."

"Q. That was about when, you think? A. About in April; either April or early May."

"Q. 1940? A. Yes. It might have been early May."

"Q. Did you have any agreement with him then as to what his wages would be? A. $7 a week for that time and when we decided on getting ready to operate her to Wilmington, we didn't know how we were going to make out and the understanding was we would try it for thirty days, but we didn't try it for thirty days because after the first trip the people that had assured us of freight didn't come through and I wasn't going to keep on pouring out my money unless I had a half-reason to get some of it back, but that agreement was for thirty days he would get $30 a week, if we tried it for thirty days, but we didn't try it for thirty days, we quit before that, and after that it was, to my assumption or idea, simply that he stayed as he had before we had started to operate, as a watchman."

"Q. You only operated the 'Betterton' for one trip? A. Yes."

"Q. That was in 1940? A. Yes, but

there was nothing said about anything as far as the matter went, it went on automatically."

"Q. Do your records show how much money you owe Mr. Fowler at this time? A. According to ours, about, if I remember right, about twenty or thirty dollars, something like that, based on $30 a week for those thirty days, and the balance $7." * * *

"Q. When Mr. Fowler was employed on board the S. S. 'Betterton' that was May 22, 1940, he was employed as engineer, was he not? A. That's when he was—this thirty days' trial I am talking about started." * * *

"Q. Mr. West, isn't it a fact that when you hired Captain Caldwell and Engineer Fowler that you agreed that they should be paid a subsistence of not over seventy cents a day? A. I don't recall that there ever was any talk about subsistence."

"Q. You actually paid for some subsistence, didn't you? A. Yes."

"Q. You advanced them money for some of it? A. Yes."

"Q. And thereafter they paid for it themselves, didn't they? A. That is correct."

[2] The Atlantic, D.C.S.C.1893, 53 F. 607.
[3] The Alanson Sumner, D.C.N.Y.1886, 28 F. 670.
[4] Butler v. Ellis, 4 Cir., 1930, 45 F.2d 951, 955.

ever, if the S. S. Betterton was withdrawn from navigation and Fowler thereafter was employed as a watchman only he was not entitled to a maritime lien for wages.[5] Accordingly under the facts as found by the court it would seem that Fowler would have been entitled to a lien for but one week's wages and subsistence. The court must accordingly not only find anew the facts as to the nature and term of Fowler's employment but also determine whether the vessel was withdrawn from navigation during the time he was employed on her and if so when such withdrawal occurred. Only then will it be in position appropriately to dispose of Fowler's claim.

The order of the district court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

[5] The General Lincoln, D.C.Md.1928, 24 F.2d 441.