BUCHANAN MARINE INC., Plaintiff,

v.

McCORMACK SAND COMPANY, McCormack Aggregates, RMW Scow Realty Company, McCormack Sand Company, Inc., and Creek Towing Corp., Defendants.

No. 87 C 2701.

United States District Court, E.D. New York.

Aug. 10, 1990.

Healy & Baillie (William F. Losquadro, of counsel), New York City and Eckert Seamans Cherin & Mellott (John R. Fornaciari and Robert M. Disch, of counsel), Washington, D.C., for plaintiff.

Bigham Englar Jones & Houston (John T. Kochendorfer, of counsel), New York City, for defendants McCormack Sand Co., McCormack Aggregates, and McCormack Sand Co., Inc.

Waesche, Sheinbaum & O'Regan, P.C. (Francis M. O'Regan, of counsel), New York City, for defendant Creek Towing Corp.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff Buchanan Marine Inc. (Buchanan), an owner and operator of tugboats and barges in Connecticut and elsewhere, brought this action to enjoin defendants from using its commercial barge mooring in Stamford Harbor, Connecticut, and to recover damages allegedly arising from defendants' use of the mooring. In a memorandum and order, dated October 2, 1987, *Buchanan Marine, Inc. v. McCormack Sand Co.*, 670 F.Supp. 469 (E.D.N.Y.1987), *aff'd* 847 F.2d 834 (2d Cir.1988), familiarity with which is assumed, the court denied Buchanan's motion for a preliminary injunction, holding that it had failed to demonstrate irreparable harm.

Defendants now move for summary judgment, arguing that Buchanan is not entitled to exclusive use of the buoy and that its claims for injunctive and declaratory relief should be dismissed. Defendants also ask for sanctions.

## I

The facts detailed in the court's previous decisions may be summarized as follows.

Buchanan owns and operates tug boats and barges for the delivery of stone and other bulk material in, among other places, Connecticut. Defendants operate barges in Stamford Harbor (the Harbor).

Both Buchanan and defendants have customers in the Harbor and say they require a harbor mooring to do business in the area. Apparently, placing a mooring outside the Harbor would cause a hazard to navigation and is thus not feasible.

Buchanan claims to own the physical buoy and to have obtained a permit in October 1981 from the Stamford Harbor master John Sheridan to maintain the buoy at a particular location in the Harbor. While allegedly never authorizing others to use the buoy, Buchanan admittedly tolerated until 1983 the occasional such use by defendants. *See* Affidavit of Allen H. Birk, Buchanan's Chief of Maintenance.

In July 1982, Buchanan notified other companies towing barges in the Harbor that it would charge them for unauthorized tie-ups at the mooring. In response to Buchanan's notice, defendant McCormack Sand Company Inc. allegedly asked Sheridan for its own mooring permit and received a response that only one commercial

anchorage would be permitted in the Harbor.

In February 1983, Buchanan and Sheridan jointly filed an application for a federal permit from the U.S. Army Corps of Engineers (the Corps) to authorize Buchanan's mooring in the Harbor in conformity with Section 10 of the federal Rivers and Harbors Act, 33 U.S.C. § 403 (1986), requiring federal approval for any "obstructions" placed in the navigable waterways.

In May 1983 Sheridan issued Buchanan a new mooring permit pursuant to his authority under state law. Six months later, the Corps issued to the "City of Stamford Harbormaster (Buchanan Marine)," a federal permit to maintain a commercial barge mooring buoy in the Harbor.

Buchanan asserts that on November 5, 1985 certain of the defendants wrongly secured barges to the buoy. Because of their weight, the outermost three barges broke away and drifted to the Greenwich Town Beach. Buchanan's barge was damaged, and it incurred costs for cleaning up the beach.

Despite repeated oral and written warnings by Buchanan to remove their barges, defendants continue to use the mooring buoy.

## II

The court may grant summary judgment under Rule 56(c), Fed.R.Civ.P., only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). The burden rests on the movant to demonstrate the lack of a genuine issue of fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). All reasonable inferences must be drawn in favor of the non-movant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

Defendants argue that because the court dismissed for lack of standing that part of Buchanan's claim for injunctive relief based on section 10 of the Rivers and Har-

bors Act (the Act), 33 U.S.C. § 403, *Buchanan Marine, supra,* 670 F.Supp. at 472, Buchanan has no basis to enjoin defendants from using the mooring buoy.

However, Buchanan also makes a claim for relief under Connecticut state law, arguing in opposition to defendants' motion that their use of the mooring is a trespass to a chattel.

■ A person commits a trespass to a chattel by "intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *See* Restatement (Second) of the Law of Torts § 217 (1965).

■ A person is liable to the possessor, the owner, of the chattel "if, but only if, (a) he dispossess the other of the chattel, or (b) the chattel is impaired as to its condition, quality, or value, or (c) the possessor is deprived of the use of the chattel for a substantial time, or (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest." *Id.* at § 218.

A person may recover "for all the harm to the chattel and for incidental damages proximately caused by the intermeddling." *See* Harper James & Gray, The Law of Torts (2d ed 1986) § 2.6 at 185.

There is no reason to doubt that Connecticut would follow the Restatement. *Accord State v. Tully,* 348 A.2d 603, 612 n. 3 (Conn.Sup.Ct.1974) (Bogdanski, Associate Justice, dissenting) (protecting another from harm justifies trespass to chattel).

Buchanan alleges it bought and maintained the eight by eight foot steel drum that, placed in the Harbor, has become the commercial mooring buoy at issue. Buchanan says it has not consented either expressly or by implication to defendants' use of the buoy and has not abandoned the buoy.

■ For purposes of the motion the court holds that the mooring buoy, whether sitting on land or floating in Stamford harbor, is Buchanan's chattel, and that defendants' meddling with it is either a trespass to a chattel or perhaps a conversion for

which Buchanan may seek relief in the form of damages and an injunction.

 Buchanan may not base its trespass claims on alleged ownership rights created by the state mooring permit issued by the harbor master. Presumably he issued Buchanan the permit pursuant to his statutory authority to maintain "safe and efficient" operation of the Harbor, Conn.Gen. Stat.Ann. § 15–1 (West 1988). But Buchanan has cited no authority and the court has discovered none that recognizes a private right of action to enforce the terms of a mooring permit. It is up to the Commissioner of the Department of Transportation for Connecticut (the Commissioner) or his designee, the harbor master, to interpret and enforce the permit. This court, sitting in Brooklyn, will not assume the harbor master's discretionary control over navigation in the Harbor.

 Defendants further urge that to permit Buchanan's exclusive use of the only commercial mooring buoy in the Harbor would violate the Commerce Clause of the United States Constitution. However, Buchanan has not sought to prevent others from placing their own mooring buoys in the Harbor. If the Commissioner or the harbor master precludes defendants from placing their own buoys in the Harbor or refuses to replace Buchanan's buoy with a "community use" buoy, defendant may seek relief against those persons.

 Defendants also contend that the federal permit issued by the Corps to the harbor master was for a "community use" buoy and thus vests defendants with the right to use the mooring buoy at issue and prevents Buchanan from enjoining defendants from its use. That federal permit gives defendants no direct rights against Buchanan.

While § 10 of the Rivers and Harbors Appropriation Act (the Act) prohibits the "creation of any obstruction not affirmatively authorized by Congress to the navigable capacity of any of the waters of the United States", 33 U.S.C. § 403, the Act does not purport to alter state created property rights between private parties.

See, e.g., 33 C.F.R. 320.4(g) ("Authorization of work or structures by [the Department of the Army] does not convey a property right, nor authorize any injury to property or invasion of other rights."); see also 33 C.F.R. 320.4(g)(6).

The federal permit at issue itself provides under its terms and "General Conditions" that

this permit does not convey any property rights, either in real estate or material, or any exclusive privileges; and that it does not authorize any injury to property or invasion of rights or any infringement of Federal, State, or local laws or regulations.

See General Condition (i).

If Buchanan has a property interest in the buoy under state law, but failed to receive the requisite federal permit to use the buoy, then Buchanan may be fined by the federal government for maintaining the "obstruction" and its buoy removed. See 33 U.S.C. § 406. But failure to have a federal permit does not divest the owner of the physical buoy of the state property interest in it.

## III

Defendants argue that Buchanan's claim for injunctive relief should be dismissed on the ground that the admiralty courts have no equitable power to issue injunctions. See, e.g., The Eclipse, 135 U.S. 599, 10 S.Ct. 873, 34 L.Ed. 269 (1899). During the past several decades, that principle has been substantially eroded. See Pino v. Protection Maritime Insurance Co., 599 F.2d 10, 16 (1st Cir.), cert. denied, 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979); Lewis v. S.S. Baune, 534 F.2d 1115, 1121 (5th Cir. 1976). While the Court of Appeals for the Second Circuit has yet expressly to abandon the old rule, it has noted that if "confronted with an appropriate case" it might find that "admiralty courts may issue injunctions." Eddie S.S. Co. Ltd. v. P.T. Karana Line, 739 F.2d 37, 39 (2d Cir.), cert. denied, 469 U.S. 1073, 105 S.Ct. 568, 83 L.Ed.2d 508 (1984). This may well be such a case. It would be premature to

dismiss Buchanan's claim for injunctive and declaratory relief.

■ The parties dispute whether or not Buchanan owns the buoy under state law or has consented to community use. Summary judgment for Buchanan is therefore inappropriate.

Defendants' motion for summary judgment and for sanctions is denied.

So ordered.