968 F.2d 196
 1993 A.M.C. 1097
 ATLANTIC MUTUAL INSURANCE COMPANY, Plaintiff-Appellant,
v.
BALFOUR MACLAINE INTERNATIONAL LTD., Van Ekris & Stoett,
Inc., Banque Indosuez and Bank Brussels Lambert,
Defendants-Appellees,
Chemical Bank, Israel Discount Bank Ltd., Bankers Trust
Company, First National Bank of Chicago, N Bank-Houston,
First National Bank of Minneapolis, B.A.I.I. Banking
Corporation, Malayen Banking Berhad, Bank of New York,
Philadelphia National Bank, Swiss Bank Corporation, Credit
Agricole, Union Bank of Switzerland, Standard Chartered
Bank, Mellon Bank (East) N.A. and Mellon Bank International,
and European American Bank and Trust Company, Defendants.
 No. 1107, Docket 91-9282.
 United States Court of Appeals,
Second Circuit.
 Argued March 11, 1992.
Decided June 24, 1992.
 
 John A.V. Nicoletti (David R. Hornig, Robert A. Novak, Donovan Parry Walsh & Repetto, New York City, of counsel), for plaintiff-appellant.
 Caspar F. Ewig (Keith B. Dalen, Richard J. Feinson, Hill, Rivkins, Loesberg, O'Brien, Mulroy & Hayden, Philip L. Graham, Sullivan & Cromwell, New York City, of counsel), for defendants-appellees Balfour Maclaine Intern. Ltd. and Van Ekris & Stoett, Inc.
 Stanley McDermott, III. (David P. Langlois, Milgrim Thomajan & Lee, P.C., New York City, of counsel), for defendant-appellee Banque Indosuez.
 Andrew D. Rackear (Marks, Murase & White, New York City, of counsel), for defendant-appellee Bank Brussels Lambert.
 Before: OAKES, Chief Judge, ALTIMARI and WALKER, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 Plaintiff-appellant Atlantic Mutual Insurance Company ("Atlantic") appeals from a judgment entered in the United States District Court for the Southern District of New York (Shirley Wohl Kram, Judge ), dismissing its action for declaratory relief against defendants-appellees Van Ekris & Stoett, Inc. ("Van Ekris"), Balfour Maclaine International, Inc. ("Balfour") and various lender banks, for lack of subject matter jurisdiction. Atlantic sought a declaratory judgment relieving it of liability under a policy it had issued to Van Ekris and its parent company Balfour. Van Ekris and Balfour claim that Atlantic is obligated to pay them $23,096,055.40 for the loss of 165,564 bags of coffee that Van Ekris had allegedly stored at various warehouses in Mexico. Atlantic asserted that because the dispute concerned questions of coverage in an insurance policy, which was predominantly maritime in nature, the action was within the district court's admiralty and maritime jurisdiction. See 28 U.S.C. § 1333.
 
 
 2
 Balfour and Van Ekris moved to dismiss the complaint contending that the contractual provisions insuring the coffee during inland storage were non-maritime in nature, and consequently, that the district court did not have subject matter jurisdiction. The district court granted the motion and dismissed the action. 775 F.Supp. 101. Atlantic now appeals.
 
 
 3
 For the reasons set forth below, we affirm the judgment of the district court.
 
 BACKGROUND
 
 4
 Balfour and its subsidiary Van Ekris are engaged in the international trade of various goods, including coffee. In late 1984, Atlantic issued Balfour an insurance policy called a "Marine Open Cargo Policy" ("the Policy"), to take effect on January 1, 1985. The general provisions of the Policy were primarily concerned with covering losses of cargo during: (1) their transportation by ship; (2) their storage on wharves; and (3) their transportation between sea-faring vessels and warehouses.
 
 
 5
 Included in the Policy under the separate heading "Special Conditions" was a "Shore Risks Coverage" provision, which extended coverage to goods during their storage at enumerated inland warehouses in Mexico and during their inland transportation within the United States. By its terms, this provision did not restrict coverage to goods intended solely for marine transport. A separate premium was calculated and paid for "Shore Risks Coverage."
 
 
 6
 On October 26, 1990, Van Ekris presented Atlantic with a claim for $23,096,055.40, under the Shore Risks Coverage provision, for the loss of approximately 165,564 bags of coffee weighing over 25,000,000 pounds. Van Ekris claimed these bags disappeared during their storage at Mexican warehouses insured by the Policy. According to Van Ekris, the coffee had been purchased from a Mexican supplier and was delivered to the warehouses, where it was to be milled and stored indefinitely while awaiting transport to Texas.
 
 
 7
 Atlantic declined the request for payment on the ground that Van Ekris had not substantiated its claim under the Policy. According to Atlantic, there was insufficient proof that the goods were ever physically delivered to the Mexican warehouses or were lost. Van Ekris continued to press the claim, and on November 2, 1990, Atlantic initiated an action in the United States District Court for the Southern District of New York (Shirley Wohl Kram, Judge ), against Van Ekris, Balfour, and various banks holding an interest in the goods, seeking a declaration that it was not liable for the loss of the coffee. Atlantic asserted that the overall maritime nature of the Policy brought the case within the admiralty jurisdiction of the federal courts. See 28 U.S.C. § 1333.
 
 
 8
 Balfour and Van Ekris moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1), contending that the district court lacked subject matter jurisdiction. In support of their motion, Balfour and Van Ekris argued that since the alleged losses occurred while the coffee was in storage at inland Mexican warehouses under a separate land-based insurance provision, the claim was non-maritime and therefore outside the scope of the district court's admiralty jurisdiction. In addition, Balfour and Van Ekris submitted affidavits stating that the lost coffee would not have been transported by ship to the United States, but was to have been transported to Texas by truck.
 
 
 9
 The district court granted the motion and dismissed the complaint for want of admiralty jurisdiction. In ruling upon the motion, the district court determined that Atlantic's contractual obligations under the Shore Risks Coverage provision were non-maritime in nature and independent of any maritime obligation. The court based this finding, in part, on the extensive nature of the land-based obligations and on Atlantic's ability to calculate separately the premium payments owed for maritime and land-based coverage.
 
 Atlantic now appeals.[1]
 DISCUSSION
 
 10
 Atlantic contends that the district court erred in dismissing the complaint for lack of subject matter jurisdiction. According to Atlantic, the overall maritime nature of the contract brings this action within the court's admiralty and maritime jurisdiction. We disagree.
 
 
 11
 In considering a motion to dismiss for lack of subject matter jurisdiction, we accept as true all material factual allegations in the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); Antares Aircraft v. Federal Republic of Nigeria, 948 F.2d 90, 96 (2d Cir.1991). However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn. Norton v. Larney, 266 U.S. 511, 515, 45 S.Ct. 145, 147, 69 L.Ed. 413 (1925). We review de novo the district court's determination that admiralty jurisdiction is lacking. See, e.g., Simon v. Intercontinental Transport (ICT) B.V., 882 F.2d 1435, 1440 (9th Cir.1989).
 
 
 12
 Title 28 U.S.C. § 1333(1) grants federal district courts the power to entertain "[a]ny civil case of admiralty or maritime jurisdiction." It has long been decided that this grant includes jurisdiction "over all contracts ... which relate to the navigation, business, or commerce of the sea." DeLovio v. Boit, 7 F.Cas. 418, 444 (C.C.D.Mass.1815) (No. 3,776) (Story, J.). However, "[t]he boundaries of admiralty jurisdiction over contracts ... being conceptual rather than spatial, have always been difficult to draw." Kossick v. United Fruit Co., 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961). Nonetheless, general principles setting the parameters of admiralty jurisdiction over maritime contracts have been established.
 
 
 13
 It is well-settled that federal admiralty jurisdiction over maritime contracts extends to suits involving marine insurance policies. See, e.g., Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 476, 42 S.Ct. 157, 158, 66 L.Ed. 321 (1922); Insurance Co. v. Dunham, 78 U.S. (11 Wall.) 1, 31, 20 L.Ed. 90 (1871); Simon, 882 F.2d at 1441. However, a contract will not sustain admiralty jurisdiction unless the contract is wholly maritime in nature. See Rea v. The Eclipse, 135 U.S. 599, 608, 10 S.Ct. 873, 875, 34 L.Ed. 269 (1890); Pillsbury Flour Mills Co. v. Interlake S.S. Co., 40 F.2d 439, 440 (2d Cir.1930). Consequently, where a contract contains both maritime and non-maritime obligations, admiralty jurisdiction is generally denied. See, e.g., Kuehne & Nagel (AG & CO) v. Geosource, Inc., 874 F.2d 283, 290 (5th Cir.1989).
 
 
 14
 There are two exceptions to this general rule. First, in a contract containing both maritime and non-maritime elements, a claim under a maritime portion of a contract will sustain admiralty jurisdiction where the maritime obligations can be "separately enforced without prejudice to the rest." Compagnie Francaise de Navigation a Vapeur v. Bonnasse, 19 F.2d 777, 779 (2d Cir.) (L. Hand, J.), cert. denied, 275 U.S. 551, 48 S.Ct. 114, 72 L.Ed. 421 (1927); see also Berwind-White Coal Mining Co. v. City of New York, 135 F.2d 443, 447 (2d Cir.1943). Second, where the non-maritime elements are merely "incidental" in an otherwise maritime contract, admiralty jurisdiction will encompass the entire contract. See, e.g., Simon, 882 F.2d at 1443; Kuehne & Nagel, 874 F.2d at 290.
 
 
 15
 The district court used these general principles to determine whether there existed subject matter jurisdiction in the instant case. After reviewing the relevant material presented by counsel, the district court concluded: (1) that the Policy was a mixed contract containing both maritime and non-maritime elements; (2) that the obligations owed under the Shore Risks Coverage provision were non-maritime in nature; and (3) that the obligations owed under the Shore Risks Coverage were substantial and separately enforceable from the maritime obligations contained in the Policy. Concluding that the Shore Risks Coverage provision could not be construed as merely incidental to the maritime obligations in the contract as a whole, the district court dismissed the action for lack of subject matter jurisdiction.
 
 
 16
 While we do not question the validity of the general principles relied upon by the district court, we find that their application in this case was premature. Before attempting to categorize contractual rights as maritime or non-maritime, a federal court must first consider whether an issue related to maritime interests has been raised. Indeed, "the demand for tidy rules can go too far, and when that demand entirely divorces the jurisdictional inquiry from the purposes that support the exercise of jurisdiction, it has gone too far." Sisson v. Ruby, 497 U.S. 358, 110 S.Ct. 2892, 2896, n. 2, 111 L.Ed.2d 292 (1990). For this reason, the question of whether a dispute falls within admiralty jurisdiction cannot be divorced from the "purposes for which admiralty and maritime jurisdiction was granted." Dunham, 78 U.S. at 24 (quoting The Steamer St. Lawrence, 66 U.S. (1 Black) 522, 527, 17 L.Ed. 180 (1861)); see also Exxon Corp. v. Central Gulf Lines, Inc., --- U.S. ----, 111 S.Ct. 2071, 2074, 114 L.Ed.2d 649 (1991).
 
 
 17
 Admiralty jurisdiction was created to provide a neutral federal forum and a uniform body of law to adjudicate rights and liabilities as they related to the trafficking of sea-faring vessels. See Dunham, 78 U.S. at 13; 1 Benedict on Admiralty § 182 (1992). Simply stated, the "fundamental interest giving rise to maritime jurisdiction is 'the protection of maritime commerce.' " Sisson, 110 S.Ct. at 2898 (quoting Foremost Ins. Co. v. Richardson, 457 U.S. 668, 674, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982)); see also Exxon Corp., 111 S.Ct. at 2074-75. Therefore, in examining whether admiralty jurisdiction encompasses a claim, a federal court must initially determine whether the subject matter of the dispute is so attenuated from the business of maritime commerce that it does not implicate the concerns underlying admiralty and maritime jurisdiction. See id. at 2075. We conclude that Atlantic's cause of action presents such a case.
 
 
 18
 The central dispute between Van Ekris and Atlantic concerns whether the loss of coffee claimed by Van Ekris under the Shore Risks Coverage provision actually occurred. Van Ekris maintains that although the coffee was in storage at the insured warehouses, it was never designated for transport by ship and, in fact, would likely have been transported by truck to Texas. Atlantic agrees with Van Ekris that the coffee was never declared for marine transport but contends that this was because the coffee never arrived at the insured warehouses.
 
 
 19
 Even construing the facts in Atlantic's favor, the coffee never became marine cargo and never entered the maritime stream of commerce. Atlantic essentially asks this Court to find admiralty jurisdiction based on the mere possibility that had the goods not been lost, some portion of the coffee might have entered the maritime stream of commerce. We find Atlantic's argument in favor of jurisdiction unpersuasive. The goods' connection with maritime commerce was simply too speculative and attenuated to justify admiralty and maritime jurisdiction in this case. See, e.g., Paul Marsh, Inc. v. Edward A. Goodman Co., Inc., 612 F.Supp. 635 (S.D.N.Y.1985).
 
 CONCLUSION
 
 20
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 [1]
 On December 24, 1991, Balfour filed for bankruptcy and is not, therefore, a party to the appeal. See 11 U.S.C. § 362 (1990). In addition, through various post-judgment stipulations and orders, only two of the financing banks, Banque Indosuez and Bank Brussels Lambert, remain as parties on appeal