## THE CULGOA.

### UNITED STATES v. W. & A. FLETCHER CO., and four other cases.

(Circuit Court of Appeals, Third Circuit. June 25, 1924.)

Nos. 3145–3149.

1. Maritime liens ⊙═26—Existence of vendor's lien or purchase-money mortgage goes only to question of priority.

Existence of vendor's lien or mortgage for unpaid purchase money goes only to the question of priority of payment, and not to owner's power to pledge ship.

2. Maritime liens ⊙═37—Mortgage or vendor's lien has no priority over liens for repairs and necessary supplies.

A lien under an ordinary mortgage or a vendor's lien for unpaid purchase money has no priority over liens for repairs or necessary supplies.

Appeals from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

In the matter of the steamship Culgoa. From decrees in libels in admiralty favorable to the W. & A. Fletcher Company to Michael Mc-Andrew, to the American Bureau of Shipping, to Baker, Carver & Mor-

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

rell, Inc., and to the Dyer Supply Company, the United States appeals. Affirmed.

William Hayward, U. S. Atty., of New York City (Walter Schaffner, of New York City, of counsel), for the United States.

Frederic M. P. Pearse, of Newark, N. J., and Rumsey & Morgan, of New York City (Mark W. Maclay and John Tilney Carpenter, both of New York City, of counsel), for appellee McAndrew.

Carter, Carter & Phillips, of New York City, for appellee Baker, Carver & Morrell, Inc.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Frank A. Bernero, of New York City, of counsel), for appellee W. & A. Fletcher Co.

Foley & Martin and William Shea, all of New York City (William J. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellee Dyer Supply Co.

Duncan & Mount, of New York City (W. B. Mendes, of New York City, of counsel), for appellee American Bureau of Shipping, Inc.

Before WOOLLEY and DAVIS, Circuit Judges, and DICKINSON, District Judge.

DICKINSON, District Judge. It is a little difficult to get a clear view or a firm grasp of the appellant's claim of right in this cause. The main facts are not in dispute. The United States owned the steamship Culgoa, and had used her as a supply ship of the navy. She had been a vessel under British registry and had been given no other. Not having any further use for her, the Navy Department offered her for sale in the usual way, under the navy regulations, by advertising for bids. A bid was made for her of $16,000 by Lucius Stewart, and was accepted. The terms were a payment of $4,000 down and the balance in deferred payments of $3,000 each, payable at successive dates extending over a period of three years. The conditions of sale contemplated that notes be given for the deferred payments, to be secured by a purchase-money preferred mortgage under the provisions of the act of Congress of 1920, known as the Ship Mortgage Act.[1] The sale was on August 1, 1922, and by August 7, 1922, was so far consummated as that the $4,000 cash payment was made and possession and control of the ship delivered to the purchaser. The execution of the bill of sale and the mortgage awaited the usual leisurely methods of governmental departments. A bill of sale and mortgage was, however, eventually prepared. The bill of sale was excuted August 8, 1922, and the mortgage August 28, 1922. The bill of sale was executed and sent, together with the mortgage, to the customs house, with directions that both be recorded.

It will be recalled that the ship had never been documented or given a registry under the laws of the United States, and there was in consequence no record of any such ship in the customs house, and no application for documentation was made before February 3, 1923. As a further consequence the papers were held in the possession of the collector, but no record or registry was made of either. The papers

[1] Comp. St. Ann. Supp. 1923, §§ 8146¼jjj-8146¼rr.

reached the collector on October 9, 1922. The ship had been stripped bare before being offered for sale, and extensive repairs and outfitting was absolutely necessary before she could be put in commission, and she must also of necessity be supplied with stores. There is no certainty or definiteness about what was done or when it was done, but following the sale and probably about September 1, 1922, the purchaser began negotiations to have the required repairs and outfitting done and the necessary supplies furnished. There is a like uncertainty and indefiniteness about what the purchaser told those who afterwards became libelants beyond the fact that he informed them the ship had been purchased from the Navy Department. The further fact is likewise clear that there was no fraudulent deception or concealment of the terms of sale by the purchaser. The failure of any libelant to learn the full facts was due to the circumstance that he did not feel interested to inquire further or did not wish to know more.

We have been asked to regard the Fletcher claim as typical of all others and Fletcher admits he was informed that the sale was in part for cash and in part on credit, and that the deferred payments were to be secured by a mortgage. He made search and inquiry at the customs house and learned that the vessel had been neither documented nor mortgaged. Repairs were then made and equipment and supplies furnished to the ship. Here again there is uncertainty and indefiniteness with respect to the extent to which or what part of the respective claims accrued before and what after the full facts became known. Libels in rem were filed by the respective libelants. The first to be filed was that of W. & A. Fletcher Company, under date of December 8, 1922, and the ship attached. On December 26, 1922, an interlocutory decree by default was entered, the ship ordered to be sold, and a writ of vend. ex. issued, and the cause referred to a commissioner. February 19, 1923, leave was granted to the United States to intervene, and petition therefor filed. Other libels were filed by the Dyer Company on January 26, 1923, by Baker et al. January 27, 1923, by McAndrew February 26, 1923, and by the American Bureau of Shipping February 27, 1923. Exceptions to the order of intervention were filed March 22, 1923, and on April 14, 1923, a motion to vacate the order of intervention was denied. The cause then proceeded before the commissioner, who filed his report on April 27, 1923, with exceptions, which were dismissed on May 22, 1923. The marshal returned a sale of the ship on June 8, 1923.

On the face of this fact recital, there would appear to have been several positions, any one of which the United States might have taken. Without enumerating what might have been done, what was done was that in the intervention petition it took the ground that it was a preferred mortgagee and prayed that the sum due on the mortgage might be paid to it out of the proceeds of the sale of the vessel; that it might be permitted to defend against the libels filed; that the rights and priorities of all claimants might be found and declared, and for general relief. Afterwards leave to file an amended petition was asked and refused. This was not done until the final stage in the proceedings. It was then asked to be filed as of June 21, 1923, and perfunctorily refused. The

motion for the allowance of the amendment is renewed in this court. The trial theory of the cause as tried was that the sale transaction resulted in a limitation of the authority of the purchaser to pledge the vessel, of which the repair and supply claimants had notice. The trial court found the right of lien to exist because the claimants had no knowledge, actual or constructive, of any lack of authority to pledge the vessel.

[1] The line of thought which the intervener asks to have followed is not easily kept in view. The difficulty originates in the starting point. If Stewart was not the owner of the ship, we may go directly to the conclusion that he could not pledge her to the libelants. As, however, he was the owner, he could pledge her unless something intervened to prevent. What was this something? It was not the existence of a vendor's lien or a mortgage for unpaid purchase money, because either would go only to the question of priority of payment, and neither to the power of the owner to pledge. It was not the existence of any covenant by the owner not to pledge, because no such covenant was made. It was not the inhibition in the act of 1920 against any pledge being given pending the recording of a preferred mortgage, because this kind of a mortgage was not, and in the absence of the fact situation to which the act of Congress applies, could not have been, given. The difficulty we experience is in the thought of how the power to pledge enters into the cause.

[2] The real controversy would seem to be over priority of payment. The libelants have their respective liens; the United States its claim for unpaid purchase money. The fund for distribution is insufficient to pay all. Is the United States to be first paid? If it claims through a vendor's lien for unpaid purchase money, this would not have priority to liens for repairs or necessary supplies. If it claims by virtue of what may be called an ordinary mortgage, here again its payment would be to a like extent deferred. If it claims by virtue of the special kind of mortgage, known as a preferred mortgage, the claim is met by the fact that it held no such mortgage. Whether it has any other standing ground for a claim of priority is an inquiry into which we need not go, because it has restricted its claim of right to whatever rights it has growing out of its contractual relations with the purchaser of the vessel.

The assignments of error are overruled, and the decree of the District Court is affirmed, with costs. Leave to file amended petition is denied.