## THE NORTHERN STAR.*

(Circuit Court of Appeals, Second Circuit. February 20, 1925.)

No. 168.

**1. Maritime liens ⬳30, 36—Repairer of ship employed by authorized agent held to have lien, notwithstanding provision of mortgage.**

Notwithstanding provision in purchase-money mortgage of ship that purchaser of ship, to whom absolute conveyance was made, should not suffer any lien which should have priority over mortgage, one repairing it under employment by authorized agent of purchaser has under Act June 5, 1920, § 30, subds. P–R (Comp. St. Ann. Supp. 1923, §§ 8146¼ooo–8146¼pp), a lien, whether or not it be superior to the mortgage, depending on whether the mortgage is a preferred mortgage.

**2. Shipping ⬳33—Mortgage not invalidated as preferred because of collector's failure to indorse it on ship's papers.**

A mortgage of a ship is, under Ship Mortgage Act of 1920 (Comp. St. Ann. Supp. 1923, §§ 8146¼jjj–8146¼rr), considered as a whole, not invalidated as a preferred mortgage by failure of the collector to indorse it on the ship's papers, as provided by subdivision D (Comp. St. Ann. Supp. 1923, § 8146¼kkk); it being recorded in the custom house, and a certified copy being placed among the ship papers, and this giving ample notice to those dealing with the vessel that there was a preferred mortgage on it.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel in admiralty by the Morse Dock & Repair Company against the Steamship Northern Star; Harry Luber being interpleaded under the fifty-sixth rule in admiralty. Libel dismissed (295 F. 366), and libelant appeals. Decree in conformity with opinion.

Barber & Stetson, of New York City, for appellant.

Gerson C. Young, of New York City, for intervening petitioner appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

*Certiorari granted 45 S. Ct. 509, 69 L. Ed. ——.

MANTON, Circuit Judge. The appellant filed this libel in rem to foreclose its maritime lien for repairs upon the steamship Northern Star. The appellee, Luber, was brought in under the fifty-sixth rule in admiralty, for the reason that he claimed to be the owner, by assignment, of a mortgage on the vessel. The appellant is confronted with the claim that this is a preferred mortgage under the Ship Mortgage Act of 1920 (41 Stat. 1001 [Comp. St. Ann. Supp. 1923, §§ 8146¼jjj–8146¼rr]).

The vessel was a former government owned ship, and was sold to the American Star Line, Inc., on August 9, 1920. The latter gave the United States of America a preferred mortgage and ten promissory notes in amount of $1,217,437.50, covering the balance due on the purchase price. The bill of sale of the mortgage was recorded at the Custom House at the Port of New York on August 11, 1920. When so given, the Northern Star was at sea. Upon its return to an American port, a certified copy of the mortgage was placed on board the vessel and kept with the ship's papers continuously from September 23, 1920. But the collector of customs did not indorse the mortgage upon the ship's papers until June 27, 1921. The appellant, between November 14 and November 27, 1920, at the request of the American Star Line, Inc., furnished repairs to the steamship at the Port of New York in the amount for which this libel is filed. On December 22, 1920, receivers were appointed for the American Star Line, Inc., a New York corporation, because of defaults in this agreement of sale and the preferred mortgage. On August 4, 1923, the intervener appellee purchased the mortgage of the United States for $117,000. On August 2, 1923, the District Court entered an order permitting all persons claiming any interest in the Northern Star to file libels against the vessel and prosecute the same to the satisfaction thereof.

The questions presented to us are (1) whether the appellant has a maritime lien because of the work, labor, and services performed in repairs to the vessel; and (2) whether the appellee (Luber's) preferred mortgage has a preferred status from August 11, 1920, the date of its recordation in the Custom House at the Port of New York; and (3) whether it takes priority over the appellant's claim, assuming that the appellant has a lien. The work performed on the vessel was during a period of time when the owner was in possession of the vessel. The mortgage contained a clause that "the Amer-

ican Star Line, Inc., covenants and agrees * * * not to suffer nor permit to be continued any lien, incumbrance, or charge which has or might have priority over this mortgage of the vessel to the party of the second part; * * * to carry a properly certified copy of this mortgage with the ship's papers; and to take such other appropriate steps, as designated to it by the party of the second part from time to time or required by the circumstances, as will give notice to the world that the party of the first part's right, title, and interest in the vessel is subject to this mortgage, and that the party of the first part has no right, power, nor authority to suffer or permit to be imposed on or against the vessel any liens or claims which might be deemed superior to or a charge against the interest of the party of the second part in the vessel."

[1] It will be observed from the foregoing provision of the mortgage that the owner covenanted not to permit a prior lien to the mortgage. The conveyance of the vessel to the American Star Line, Inc., was absolute, and, when the appellant finished its work pursuant to its employment by an authorized agent, it had a lien on the vessel pursuant to the terms of the Ship Mortgage Act of 1920 (subdivisions P, Q, R [Comp. St. Ann. Supp. 1923, §§ 8146¼ooo–8146¼pp]), but whether it ranks ahead oft the mortgage of Luber depends upon whether that mortgage is a preferred mortgage under the provisions of the Ship Mortgage Act. If that mortgage may not be deemed a preferred mortgage, then the appellant's lien is senior in rank. The Buckhannon (C. C. A.) 299 F. 519; The Culgoa (C. C. A.) 299 F. 935; The Rupert City (D. C.) 213 F. 263.

In The Buckhannon, supra, we said: "She was a mortgaged vessel, but it is a point too familiar to need citation that the mere fact that there is a mortgage, and not a preferred mortgage, upon a ship, does not in the least prevent or limit the right of her owner, or that owner's lawful agents, to pledge the credit of the vessel by the incurring of a maritime lien. This is because the maritime lien is superior to the mortgage and takes no cognizance of the mortgage as such."

[2] However, if the mortgage be a preferred one, the lien of the appellant is junior to that of the mortgage lien. The appellant attacks the validity of the mortgage as a preferred mortgage, contending that the failure to indorse it on the ship's papers before June 27, 1921, made it invalid prior thereto as such preferred status. It had been recorded in the Custom House on August 11,

1920, and a certified copy placed on the vessel on September 28, 1920. The failure to indorse the mortgage on the ship's papers was the failure of the collector of the custom. The act provides for the indorsement of the mortgage on the ship's papers, and subdivision M (Comp. St. Ann. Supp. 1923, § 8146¼nnn) provides that a lien arising prior in time to the recording and indorsement of a preferred mortgage is a preferred maritime lien, but these provisions must be interpreted in the light of the whole statute. Subdivision D (Comp. St. Ann. Supp. 1923, § 8146¼kkk) provides that such indorsement shall be made by the collector of customs at the port of documentation of the mortgaged vessel, or, upon request of the mortgagee by the collector of customs at the port where the vessel may be found. It will be noted that the duty is imposed upon the collector of customs. When a vessel is not at her home port, the collector of customs at that port cannot make the indorsement on the papers, and the indorsement apparently must be made in an American port. Therefore such recordation may not be made on an American vessel which happens to be plying between foreign ports. But it evidently was the intention of the Ship Mortgage Act to protect the mortgagee even under such circumstances. That the act places very strongly upon the collector of customs the duty of making the indorsement is indicated by subdivision D (Comp. St. Ann. Supp. 1923, § 8146kkk), which provides, "and no clearance shall be issued to the vessel until such indorsement is made." Subdivision J (Comp. St. Ann. Supp. 1923, § 8146¼ mmm) renders the collector of customs liable to persons entering into any contract on the credit of the vessel who have suffered any damage as a result of the collector's failure to perform any duty required of him under the act. These sections indicate that it was not intended by Congress to penalize a mortgagee for the failure of the collector of customs to perform his duty, but placed the responsibility on the collector. Furthermore, liability of the mortgagor for any damage to third parties resulting from any failure on the mortgagor's part, is provided for, and no mention is made of liability on the part of the mortgagee. It was pointed out in The Egeria (C. C. A.) 294 F. 791, that such indorsement of the mortgage was a matter with which the mortgagee had nothing to do, that it was the duty of the collector of customs to make the indorsement, and the presumption would be, until the contrary was shown, that the collector duly performed his

duty, and, if there was a failure of allegation in this respect, the remedy was to except to the libel, for the defect was one which might have been cured by amendment. The mortgagee, in the nature of things, has no control over the mortgagor or the collector of customs, and the act indicates that it is not contemplated that the mortgage be invalid by reason of the failure of indorsement by the collector. It is the intention of the Ship Mortgage Act to protect the mortgagee, not to penalize him for the failure of a government official to comply with the provisions of the act. All was done here that could be done by the recordation of the mortgage, the placing of it among the papers of the ship, and the delay of the collector of customs in making the indorsement, to some extent excused by reason of the fact that the vessel was on the high seas, will not invalidate this mortgage as a preferred mortgage. The Nanking (D. C.) 1923, A. M. C. 1191, 292 F. 642; The Oconee (D. C.) 280 F. 927; The Oswego (D. C.) 292 F. 403. The purpose of such an indorsement manifestly is to give notice to persons having dealings with the vessel that there is a preferred mortgage upon it. Such notice was amply given by the record of August 11, 1920, in the Custom House, and filing a certified copy on board the vessel with its papers on September 23, 1920. Reasonable care and diligence, by way of investigation, would have given the appellant knowledge of the mortgage and its terms before the repairs were made in November, 1920. United States v. Carver, 260 U. S. 482, 438, S. Ct. 181, 67 L. Ed. 56; The Princess Matoika (C. C. A.) 1924, A. M. C. 1033, 1 F.(2d) 233; The Moosabee (D. C.) 1923, A. M. C. 874, 7 F.(2d) 501; The Susana (C. C. A. 4th) 2 F.(2d) 410.

We hold that the libelant has a maritime lien which attaches to the vessel, but which is junior to the lien of the appellee, Luber, and we hold that his mortgage is a preferred mortgage within the terms of the act.

A decree will be entered in conformity with this opinion.