## NATIONAL BANK OF FAYETTE COUNTY v. ENTERPRISE MARINE DOCK CO. et al.

### No. 2993.

Circuit Court of Appeals, Fourth Circuit.

Sept. 19, 1930.

Robert L. Hogg, of Point Pleasant, W. Va. (Hogg & Hogg, of Point Pleasant, W. Va., on the brief), for appellant.

L. C. Somerville, of Point Pleasant, W. Va. (Somerville & Somerville, of Point Pleasant, W. Va., on the brief), for appellees.

Before NORTHCOTT, Circuit Judge, and GRONER and ERNEST F. COCHRAN, District Judges.

GRONER, District Judge.

Enterprise Marine Dock Company on August 27, 1929, filed its libel in the District Court against the steamer Governor Harding for necessary repairs furnished at Point Pleasant, W. Va. The vessel was attached by the marshal, and, by decree subsequently entered, sold at public auction. A number of intervening petitions have been filed in the cause, among them the petition of National Bank of Fayette County, Pa., claiming priority of payment out of the proceeds of sale as the holder of a preferred mortgage. The cause was referred to a special master, who reported in favor of the claims of the repairmen, and against the claim of the bank to a preferred mortgage, and upon exceptions, the master's report was confirmed by the District Court. This appeal was taken from that decree.

Two questions arise: First, whether the bank had a preferred mortgage, and if it did not, whether the claims for repairs furnished to the vessel are entitled to the status of maritime liens.

Congress, as a part of the Merchant Marine Act of June 5, 1920, § 30, 41 Stat. 1000 (46 USCA § 911 et seq.), provided a method whereby a mortgage upon a vessel of the United States should have a preferred status. This act has been declared constitutional. The Oconee (D. C.) 280 F. 927, 929. The act provides certain things to be done as a prerequisite to the validity and priority of the mortgage—for instance: The vessel must be of at least 200 gross tons; the mortgage must include the whole of the vessel; it must be endorsed upon the vessel's documents; it must be recorded; time and date of endorsement must be shown; an affidavit of good faith must be filed; the preferred status must not be waived; and the mortgagee must be a citizen of the United States. It is also provided that the mortgagor is to retain a certi-

fied copy of the mortgage on board the vessel, and that the same shall be exhibited by the master to any person having business with the vessel. An inspection of the mortgage held by the bank abundantly shows the failure to comply with the provisions of the act of Congress with relation to preferred mortgages, and an inspection of the vessel's documents filed as an exhibit likewise shows that these contained no indorsement of the mortgage.

Under these circumstances, the District Court was clearly right in holding that the claim of the bank was not entitled to the status of a preferred mortgage, but the court had jurisdiction, after the Governor Harding had been sold and the proceeds of the sale paid into the registry of the court, as was said by the Supreme Court in The J. E. Rumbell, 148 U. S. 1, 13 S. Ct. 498, 37 L. Ed. 345, to pass upon the claim of the mortgagee, as of any other person, to the fund, and to determine the priority of the various claims, upon petitions such as were filed by the mortgagee and the materialmen in this case. In this aspect of the case, it becomes necessary to pass upon the claims of the repairmen. It is contended by the bank that the liens claimed by the repairmen should have been declared invalid because of failure on their part to exercise reasonable diligence to ascertain that the person ordering the repairs was without authority to bind the vessel. Subsection R of section 30 of Act of June 5, 1920, 41 Stat. 1005 (46 USCA § 973).

The steamer Governor Harding had been engaged in commerce on the Ohio river. She had been officially inspected and found unseaworthy, and in the summer of 1929 was brought to the dry dock at Point Pleasant, W. Va., and placed in the hands of the Enterprise Marine Dock Company for necessary repairs. The arrangements for these repairs were made by P. T. Burdett, master of transportation of the Ohio & Mississippi Transit Company, and at the time the repairs were ordered, as well as at the time the libel was filed, the record-owner of the steamer was Northwestern Terminals Company, an Indiana corporation. The bank insists that because it is not shown anywhere affirmatively that the Northwestern Company authorized the repairs, or ratified the contract, the repairmen may not rightfully claim a lien. The work was done in July and August, and the libel was filed August 27. On the 15th of December, following, a bill of sale of the vessel from Northwestern Company to Ohio & Mississippi Transit Company was filed in the proper collector's office, so that some time

prior to the filing of the special master's report, and a little more than a month prior to the entry of the final decree, the vessel was duly documented in the name of the company which admittedly had caused the repairs to be made, and at no time has it contested any of the repair claims, either as to their amount or their validity, and this is true also of the Northwestern Company, so that the case as made shows the steamer to have belonged to the Northwestern Company, to have been delivered by that company to the Mississippi Company, under whose order necessary repairs were made to fit her for navigation, and to whom she was thereafter sold. To find, under these circumstances, that the repairs were not ordered by a person to whom the management of the vessel was intrusted, or that the person ordering the repairs was tortiously or unlawfully in possession of her, without any proof to this effect, and with irresistible inferences to the contrary, would require a degree of imagination which we think we should not indulge. Nor is there anything in the proof which would justify us in saying that in the exercise of reasonable diligence the repairmen could have ascertained that the person ordering the repairs was without authority to bind the vessel because of the terms of a charter party, agreement for a sale of the vessel, or for any other reason, and this because there is a total lack of evidence of any charter party or agreement to the effect that the Mississippi Company, in whose custody the vessel was, was not authorized to make the necessary repairs. We have no doubt that if there had been such an agreement, or mortgage, or provision in a reserve contract of sale, it would have been shown; but even in such a case, it is at least questionable whether such a reservation would have postponed the lien of the repairmen to the lien of a mortgage not preferred. The Northern Star (C. C. A.) 7 F.(2d) 505; Id., 271 U. S. 552, 46 S. Ct. 589, 70 L. Ed. 1082. The case, therefore, has no similarity to that made in the cases of The Clio and The Marganza, 260 U. S. 482, 43 S. Ct. 181, 67 L. Ed. 361. In those cases the charter under which the owner delivered possession forbade the creation of a lien prior to the title or interest of the owner, and this the Supreme Court held imposed upon the supplyman the duty of exercising reasonable diligence to ascertain the true facts. So in this case, if it had been affirmatively shown, on behalf of any one opposing the validity of the liens, that the Mississippi Company was without authority to bind the vessel, the failure of the repairmen to make inquiry would have been

fatal to their claim of lien, but without such evidence, the repairs having been made, and being necessary in the operation of the vessel, and no question being made as to the value of the same, and having been ordered by a person in unchallenged charge of the vessel as the representative of a company to whom the vessel was almost immediately thereafter sold, there can be no question, it seems to us, that the decree of the District Court is clearly right, and should be affirmed.

Affirmed.