## THE MARIAM.

## ALLEN v. UNITED STATES.

### No. 6902.

Circuit Court of Appeals, Ninth Circuit.
Sept. 6, 1933.

H. H. Harris and David E. Field, both of Los Angeles, Cal., for appellant.

Samuel W. McNabb, U. S. Atty., and Frank M. Chichester, Asst. U. S. Atty., both of Los Angeles, Cal., for appellee.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

WILBUR, Circuit Judge.

A libel having been filed by the government to forfeit the American gas screw vessel Mariam, which is under 200 tons burden, the claimant, W. C. Allen, filed an answer to said libel alleging that he held a bona fide chattel mortgage executed February 21, 1930, by A. F. Wright, the registered owner of said vessel, and that the claimant had no knowledge at the date of the said mortgage that said Wright was not the sole and only owner of said vessel, if such were the case. The chattel mortgage was to secure the sum of $5,000 and was recorded February 25, 1930, at 9:30 o'clock a. m. in liber 1351/2 of mortgages, folio 56, in the office of the collector of customs of the Port of San Diego, Cal. An exception was filed to the answer of the claimant and appellant on the ground that the facts alleged in the answer of the claimant were insufficient to constitute a defense thereto. The libel is in three counts. The first count is based upon a false oath taken by A. F. Wright to obtain the registration of said ves-

sel on June 30, 1924, in that at the time said oath was taken by A. F. Wright alleging that he owned the vessel, the vessel was in fact owned by a foreign subject or citizen of a foreign power whose name was unknown to libelant. The second count alleged that by such false oath a certificate of registry was knowingly and fraudulently obtained for said vessel. The third count alleged that the certificate of registration was knowingly and fraudulently used by said vessel which was not entitled to the benefit thereof.

The government excepted to this answer upon the ground that the facts stated were insufficient to constitute a defense thereto. The court sustained the exception and ordered a decree of condemnation.

It appears from the memorandum opinion in the transcript that the trial judge was of opinion that the answer failed to allege that the claimant held a preferred mortgage, as defined by the ship mortgage act, and for that reason held that the mortgage in question was not protected by subdivision (b) of subsection O of section 30 of Act June 5, 1920, c. 250, 41 Stat. 1004 (46 USCA § 961 (b), which reads as follows: "(b) The interest of the mortgagee in a vessel of the United States covered by a mortgage, shall not be terminated by the forfeiture of the vessel for a violation of any law of the United States, unless the mortgagee authorized, consented, or conspired to effect the illegal act, failure, or omission which constituted such violation."

The trial court assumed that the subdivision in question applied only to a preferred mortgage which is expressly authorized and defined in subdivision (a) of subsection D of section 30, 41 Stat. 1001 (46 USCA § 922 (a). This statute provides, among other things: "A valid mortgage which, at the time it is made includes the whole of any vessel of the United States of 200 gross tons and upward, shall in addition have, in respect to such vessel and as of the date of the compliance with all the provisions of this subdivision, the preferred status given by the provisions of subsection M, section 953. * * *"

This section expressly recognizes that there are valid mortgages upon vessels which are not, and some of which cannot become, preferred mortgages. The latter is true of all mortgages upon vessels of under 200 tons gross. Such mortgages were recognized by statute at least as early as 1850, July 29, 1850, 9 Stat. 440, ch. 27, section 4192, Rev. Stat. (46 USCA § 921 note). The J. E. Rumbell, 148 U. S. 1, 15, 13 S. Ct. 498, 37 L. Ed. 345. The law of California provides for chattel

mortgage upon all personal property including ships, section 2955, as amended, Stats. 1909, p. 34. As originally enacted it authorized a chattel mortgage upon vessels of more than 5 tons' burden (March 21, 1872) Code amendments: 1875-76, p. 79; 1877-78, p. 88; 1887, p. 5; 1893, p. 84; 1895, p. 57; 1897, p. 95; 1903, p. 78; 1905, p. 36; 1907, p. 886. It was, however, provided as early as 1872 that such a mortgage "is void against any person other than the mortgagor, his heirs and devisees and persons having actual notice thereof unless the mortgage was recorded in the office of Collector of Customs where such vessel is registered and enrolled." The Supreme Court of the United States has recognized "an ordinary mortgage of a vessel but has held that such mortgage is not a maritime contract." In The J. E. Rumbell, 148 U. S. 1, 15, 13 S. Ct. 498, 501, 37 L. Ed. 345, it is stated as follows: "An ordinary mortgage of a vessel, whether made to secure the purchase money upon the sale thereof or to raise money for general purposes, is not a maritime contract. A court of admiralty, therefore, has no jurisdiction of a libel to foreclose it, or to assert either title or right of possession under it. [Bogart v.] The John Jay, 17 How. 399 [15 L. Ed. 95]; The Eclipse, 135 U. S. 599, 608, 10 S. Ct. 873 [34 L. Ed. 269]. But it has jurisdiction, after a vessel has been sold by its order, and the proceeds have been paid into the registry, to pass upon the claim of the mortgagee, as of any other person, to the fund, and to determine the priority of the various claims, upon petitions such as were filed by the mortgagees and the material men in this case. The Globe, 3 How. 568, 573 [11 L. Ed. 729]; The Angelique, 19 How. 239 [15 L. Ed. 625]; The Lottawanna, 21 Wall. 558, 582, 583 [22 L. Ed. 654]; rule 43 in admiralty."

The ship mortgage act makes a preferred mortgage a maritime lien (46 USCA §§ 922, 924, 951, 953).

In Morse Drydock & Repair Co. v. S. S. Northern Star, 271 U. S. 552, 46 S. Ct. 589, 70 L. Ed. 1082, the Supreme Court had under consideration the relative priority of a mortgage lien, and a lien for repairs upon the Northern Star. The trial court (295 F. 366) and Circuit Court of Appeals [7 F.(2d) 505] had held that the mortgage lien took priority. The Supreme Court reversed that decision on the ground that the parties to the mortgage had failed to comply with one of the provisions of 46 USCA § 922 (section 30 subsec. D, 41 Stats. 1000), and for that reason the mortgage did not occupy the preferred status.

The fact that a mortgage upon a vessel had a well-recognized status before the enactment of the ship mortgage act gave a mortgage a preferred status as a maritime lien prevents the inclusion of the word "preferred" in subdivision (b), 46 USCA § 961, supra, by construction. The appellee argues in effect that the context of the ship mortgage act clearly indicates that the omission of the word "preferred" in the subdivision is a mere inadvertence. We can see no basis for the contention and no justification for a departure from the plain language of the statute which clearly distinguishes between a mortgage and a preferred mortgage. On the contrary, the same reasons which would incline Congress to relieve the holder of a preferred mortgage from the effects of forfeiture of a vessel to the government, would be equally applicable in the case of a mortgage which is not preferred, and in view of the fact that a mortgage upon a vessel under 200 tons could not be given the status of preferred mortgage under the statute clearly indicates a reason for the omission of the word "preferred" in subdivision (b), supra, relieving the holder of a mortgage from forfeiture when he is without fault.

It appears from the apostles that the vessel had been sold for $1,800 and that the money is in the hands of the marshal awaiting disposition by the court. The allegations of the libel are all based upon the theory that A. F. Wright was not the owner of the vessel and that his oath to that effect was perjured. Appellant's mortgage was executed to him by A. F. Wright about six years after the false registry. If it is true that Wright did not own the vessel, it is difficult to see on what theory the mortgage would be valid against the government, not having been executed by the owner of the vessel. That matter has not been presented in the argument.

The answer of the appellant specifically alleges that A. F. Wright was the owner of the vessel at the time he executed the mortgage. In view of that allegation it is necessary to determine the fact as to the ownership of the vessel at the time of the execution of the mortgage by him.

The case is remanded to the trial court, with instructions to overrule the exceptions of the government to claimant's answer and to take evidence as to the ownership of the vessel at the time of the execution of the mortgage. In the event it is determined that the vessel at that time was owned by A. F. Wright the proceeds of the sale thereof shall be awarded to the claimant to the extent necessary to pay the amount yet due on the mortgage. If, however, it should appear that Wright was not the owner of the vessel at the time he executed the mortgage, then in that event the amount realized for the sale thereof shall be forfeited to the government.