## THE EMMA GILES.

### THE EXPRESS.
Nos. 2126, 2127.

District Court, D. Maryland.
June 26, 1936.

John H. Skeen (of Emory, Beeuwkes, Skeen & Oppenheimer) and Raymond S. Williams (of Hershey, Donaldson & Williams), both of Baltimore, Md., for libellant.

James W. Chapman, Jr., of Baltimore, Md., for respondents.

CHESNUT, District Judge.

The sole question in these cases is whether this Court has jurisdiction, in *admiralty,* to foreclose an alleged "preferred ship mortgage" by sale of the above named ships. The libellant in both cases is the First National Bank of Baltimore (successor to the Citizens National Bank) as Trustee, under mortgage deed of trust dated February 1, 1925, from the Tolchester Beach Improvement Company of Kent County, made to secure an issue of $175,000 of bonds and covering three vessels, the Emma Giles, the Express and the Annapolis, and also four lots of ground situated in Baltimore City and two in Kent County, Maryland. The principal business of the Tolchester Company has been the maintenance of passenger and excursion boat service from its wharf property in Baltimore City to Tolchester Beach in Kent County, Maryland. The mortgagor of the vessels resists the foreclosure proceedings on the ground that the mortgage deed of trust did not fully comply with certain conditions of the Act of Congress of 1920 known as the Ship Mortgage Act (46 U.S.C.A. §§ 911 to 984, Act of June 5, 1920, c. 250, 41 Stat. 1000), in consequence of which the mortgage is not entitled to the status of a "preferred ship mortgage" under the Act, and this court is therefore without jurisdiction in admiralty to entertain a libel for the sale of the vessels in the mortgage foreclosure proceedings.

The particular defect in the mortgage here set up is based on the provisions of section 922 (e) which provides as follows:

"A mortgage which includes property other than a vessel shall not be held a preferred mortgage unless the mortgage provides for the separate discharge of such property by the payment of a specified portion of the mortgage indebtedness. If a preferred mortgage so provides for the separate discharge, the amount of the portion of such payment shall be indorsed upon the documents of the vessel."

The mortgagor says in this case that the mortgage did not provide for the separate discharge of the non-maritime property within the meaning of section 922 (e); and further that the amount of the discharge rate, if any, was not endorsed upon the documents of the vessel. The question thus presented involves, first, a

consideration of the provisions of the mortgage with respect to partial releases of the mortgaged property, and, second, the construction and applicability of the particular statute to the provisions of the mortgage. The bearing of these matters upon the ultimate question as to the jurisdiction of the court will clearly appear from a reading of the recent opinion of the Supreme Court of the United States in Detroit Trust Co. v. The John J. Barlum, 293 U.S. 21, 55 S.Ct. 31, 79 L.Ed. 176, where the Chief Justice very fully considered a similar question of jurisdiction in admiralty. It was there said (293 U.S. 21, at page 32, 55 S.Ct. 31, 33, 79 L.Ed. 176):

"Prior to the enactment of the Ship Mortgage Act 1920, the admiralty had no jurisdiction of a suit to foreclose a mortgage on a ship. Bogart v. The Steamboat John Jay, 17 How. 399, 402, 15 L. Ed. 95; Schuchardt v. Babbidge Ship Angelique, 19 How. 239, 241, 15 L.Ed. 625; People's Ferry Co. v. Beers, 20 How. 393, 400, 15 L.Ed. 961; The Lottawanna, 21 Wall. 558, 583, 22 L.Ed. 654; The Eclipse, 135 U.S. 599, 608, 10 S.Ct. 873, 34 L.Ed. 269; The J. E. Rumbell, 148 U.S. 1, 15, 13 S.Ct. 498, 37 L.Ed. 345. If jurisdiction in the admiralty of the present suits is to be maintained it must be by reason of the application and validity of the provisions of the Ship Mortgage Act.

"1. *The application of the statute.* The grant of jurisdiction is found in subsection K (46 U.S.C. § 951 [46 U.S.C.A. § 951]) which provides:

"'A preferred mortgage shall constitute a lien upon the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by such vessel. Upon the default of any term or condition of the mortgage, such lien may be enforced by the mortgagee by suit in rem in admiralty. Original jurisdiction of all such suits is granted to the district courts of the United States exclusively.'

"The grant is thus one of exclusive jurisdiction to enforce the lien of a 'preferred mortgage.' If the mortgage is a preferred mortgage within the definition of the Act, jurisdiction is granted; otherwise not. 'Preferred mortgages' are carefully defined in the detailed provisions of subsection D, 46 U.S.C. § 922 (46 U.S. C.A. § 922). The application of this term in the subsequent provisions of the Act, including the provision as to admiralty jurisdiction, is not left to inference but is explicitly stated in subdivision (b) of subsection D as follows:

"'Any mortgage which complies in respect to any vessel with the conditions enumerated in this subsection is hereafter in this chapter called a "preferred mortgage" as to such vessel.'"

It thus clearly appears from the above quotation, and from other parts of the opinion in the Barlum Case, that the admiralty court does not have the jurisdiction to foreclose this mortgage unless it is a "preferred ship mortgage" as a result of compliance with all the conditions of the Act. Section 922 (a) provides:

"A valid mortgage * * * shall in addition have, in respect to such vessel and as of the date of the compliance with all the provisions of this subdivision, the preferred status given by the provisions of subsection M, section 953, if—"

Then follows a particular statement of the requirements of a preferred mortgage which include the recordation of the mortgage in the office of the Collector of Customs as otherwise provided, the endorsement of the mortgage on the vessel's documents, and other provisions not here in point. Subdivision (b), 46 U.S.C.A. § 922, further provides that—

"Any mortgage which complies in respect to any vessel with the conditions enumerated in this subsection is hereafter in this chapter called a 'preferred mortgage' as to such vessel."

Subdivision (c) requires the endorsement upon the documents of the vessel covered by a preferred mortgage of certain information regarding the mortgage including—

"(4) Any amount required to be indorsed by the provisions of subdivision (e) or (f) of this subsection."

There follows subdivision (e) above quoted and also subdivision (f) which provides for the case where the mortgage covers more than one vessel, in which event it is not *required* that the mortgage provide for the separate discharge of each vessel by the payment of a portion of the mortgage indebtedness, but if the mortgage does so, then the amount of the portion to be paid upon discharge must be endorsed upon the documents of the vessel; and in case the mortgage does not provide for the separate discharge of the vessel, the district court "shall determine

the portion of the mortgage indebtedness increased by 20 per centum (1) which, in the opinion of the court, the approximate value of the vessel bears to the approximate value of all the vessels covered by the mortgage, and (2) upon the payment of which the vessel shall be discharged from the mortgage."

It will be observed that the statute mandatorily requires that where the mortgage covers property other than a vessel, the mortgage *must* provide for the separate discharge of such property by the payment of a specified portion of the mortgage indebtedness; and also the amount of such payment for such separate discharge of the non-maritime property must be endorsed upon the documents of the vessel. It is conceded by the libellant that no such endorsement on the documents of the vessel has in fact been made although there was endorsed upon the vessel's documents the alleged discharge rate for the particular vessel itself. The question thus presented in this case is whether this particular mortgage deed of trust does provide for the separate discharge of the non-maritime property as required by the statute; and if so, what is the effect of the failure to endorse the amount specified for the discharge upon the documents of the vessel. The libellant contends that the endorsement of the discharge rate is directory and not mandatory and of itself does not constitute a fatal defect in the status of the deed of trust as a preferred ship mortgage. The libellant further contends that the mortgage does provide for a separate discharge of the non-maritime property as required by the statute, when properly construed.

The mortgage is in the conventional elaborate form of a deed of trust to secure $175,000 par value of bonds, now reduced to $90,000. It was evidently intended to comply with the Ship Mortgage Act, and in article III, § 14, the mortgagor expressly covenanted "to comply with and satisfy the requirements of the Ship Mortgage Act of 1920, so as to establish and maintain this mortgage as a preferred mortgage under said Act." But, as we are concerned with the question of the Court's jurisdiction, the mere intention of the parties, or their promise as to future action, is not sufficient, if the conditions of the Act have in fact not yet been complied with. On the particular

point here involved the only relevant provision of the deed of trust is to be found in Article Seven—Release of Mortgaged Property. This Article is itself in the conventional form for such instruments, and apparently not drawn with special reference to the requirement of 46 U.S.C.A. § 922 (e) of the Ship Mortgage Act. It is framed principally for the protection of the bondholders. The mortgagor is not given an *absolute* right to a release of any of the mortgaged property upon payment of a certain sum, but only a *conditional* right. The provision is that the Trustee shall release portions of the property from the mortgage if (1) the mortgagor is not known to be in default, and (2) "the ownership of such property by the Company no longer shall be necessary or advantageous for use in connection with the business of the Company," and (3) "no such release shall be made unless the Company shall have sold or exchanged or have contracted to sell or exchange the property so to be released"; and (4) upon payment to the Trustee of a specified sum of money for the respective items of property, which sums were fixed at $100,000 for the Baltimore City real estate, at $35,000 for the Kent County real estate, and at $75,000 for the vessel the Express; $10,000 for the Emma Giles and $10,000 for the Annapolis.

The question presented is whether these provisions for the release of the non-maritime property comply with the requirement of section 922 (e) "for the separate discharge of such property by payment of a specified portion of the mortgage indebtedness." The statute should of course be interpreted and applied in the light of its purpose. This is however not clearly revealed in its wording or in its legislative history, so far as I have been able to gather it with the assistance of counsel and from independent research. The main purpose of the Act as a whole was to attract capital to domestic shipping by affording better mortgage security, but the particular subdivision seems rather aimed at the protection of other persons dealing with the ship, as prospective lienors. It is in the form of a limitation upon the rights of the mortgagee, and is a condition precedent to his securing a preferred mortgage. The exact meaning of the phrase "separate discharge" is not defined in the Act, but there is no reasonable doubt that in plain terms it requires that

the mortgage must provide for a release of the non-maritime property upon the payment of a specified sum; and the section further provides that this sum must be endorsed on the ship's documents. The real purpose of these provisions seems to have been two-fold. Probably the primary purpose was to insure the validity of the Act in extending the admiralty jurisdiction to ship mortgage foreclosures, and to free the proceeding from the entangling alliance of the non-maritime property which obviously could not be foreclosed in admiralty, because entirely beyond any proper concept of such jurisdiction. And indeed this is expressly provided for by section 954 (b) which reads:

"This chapter shall not be construed, in the case of a mortgage covering, in addition to vessels, realty or personalty other than vessels, or both, to authorize the enforcement by a suit in rem in admiralty of the rights of the mortgagee in respect to such realty or personalty other than vessels."

This primary purpose may be inferred partially at least from the provisions of section 922 (f) and partly from the legislative history (see 293 U.S. 21, at pages 39 and 40, note 5, 55 S.Ct. 31, 36, 79 L. Ed. 176, 184; and The Fort Orange [D. C.] 5 F.Supp. 833, 838). It was apparently thought that, as admiralty could not deal at all with the non-maritime property, the mortgage must in effect provide for the severance of the maritime from the non-maritime property when it came to foreclosure in admiralty. And to accomplish this it was thought necessary to provide that the non-maritime property must be released or discharged from the mortgage upon payment of a specified sum, thus also apportioning or severing the mortgage debt with respect to the several properties, maritime and non-maritime. And it will be noted that the requirement for severance is made mandatory in subdivision (e) of section 922 when dealing with both maritime and non-maritime property, but is only permissive in subdivision (f) dealing with several items of maritime property, as in a fleet mortgage.

■ The crucial question of construction is whether the provision for the severance, being conditional only and not absolute, meets the requirement of the statute for a "separate discharge" of the non-maritime property. After careful consideration, I reach the conclusion that it does not. The libellant's counsel argues that, as the statute is not explicit upon the subject, *any* provision for severance whether absolute or conditional should be regarded as sufficient. But looking at the matter as it probably appeared to Congress, I think this view is untenable. The admiralty jurisdiction was being extended into a new field, and care was taken to so limit its advance that it would be found within constitutional bounds. The Barlum Case makes it clear that the jurisdiction is validly conferred but only when the Act is fully complied with. And other judicial decisions likewise indicate that the Act is to be rather strictly construed. Morse Dry Dock Co. v. Northern Star, 271 U.S. 552, 46 S.Ct. 589, 70 L.Ed. 1082; National Bank v. Enterprise Marine Dock Co. (The Governor Harding), 43 F.(2d) 547 (C.C.A.4); Ocean View, 21 F.(2d) 875, 1928 A.M.C. 240 (D.C.Md.).

Congress evidently intended that the requirement for "separate discharge" should be practically effective to accomplish the severance. This can hardly be gratified by a provision, such as in this case, which limits the power of severance to conditions which have not been met and in the nature of the business of the mortgagor in the case were not likely to have been met, as the whole property mortgaged was used as an entity in the business of the mortgagor. The rigidity of the conditions here imposed for a "separate discharge" of the non-maritime property were evidently imposed (as customary in deeds of trust to secure bonds) in the interest of and for the protection of the bondholders, and were entirely appropriate for that purpose; but they fail to meet the requirement of the Act, which in this respect requires provision for a definite and certain severance of the mortgaged property, with an apportionment of the mortgage debt, so that in effect there will be created two mortgages, one foreclosable in admiralty, on the maritime property, and the other in a court of equity for the property on land. Without such practicable and effective severance, it was evidently the thought of Congress that the provision for exclusive admiralty jurisdiction would be of too uncertain validity.

■ Furthermore it is very doubtful whether the instant mortgage is not defective under the Act in its release clause in that it conditions the release of the

non-maritime property upon the payment of a fixed and certain sum in cash, and not to a fixed *proportion* of the mortgage debt. The language of subdivision (e) of section 922 is "the payment of a specified portion of the mortgage indebtedness." If the debt is a certain continuous sum, the discharge payment for the non-maritime property may also be a certain sum, and still gratify the Act. But the provisions of the related subdivision (f) seem to indicate that the meaning of "a specified portion of the mortgage indebtedness" is a certain *proportion* of the debt as it exists at the particular time. In this view the release clause of the particular mortgage would not gratify the Act. The original debt was $175,000. It has now been reduced to $90,000. But the non-maritime property may be released only upon payment of $135,000. It is obvious that the release clause under the facts of the case is entirely ineffective to accomplish a practicable severance of the separate properties. As it stands, it is only a futile gesture, in the realistic sense. Compare, however, Collier Advertising Services v. Hudson River Day Line (D. C.) 14 F.Supp. 335, 1936 A.M.C. 206, 213.

 As already mentioned, the purpose of section 922 (e) was two-fold. It was first intended to insure admiralty jurisdiction. Its other purpose is apparently to protect prospective lienors of a particular ship. To accomplish this it provides, "If a preferred mortgage so provides for the separate discharge, the amount of the portion of such payment shall be indorsed upon the documents of the vessel." And subdivision (e) of section 922 also provides that there shall be endorsed upon the documents of the vessel further information regarding the mortgage. This is, of course, to give notice to other parties dealing with the ship. On first consideration of this particular provision of subdivision (e) the question occurred as to why it would be to the advantage of such persons to know the release rate of the mortgage as to the non-maritime property, in which they would not be directly interested; and it seemed at first blush that very much more direct interest would be in the release value of the particular ship. And it has been urged by the libellant this particular provision only so remotely affects prospective lienors of the particular ship that the failure to comply with the provision, which is admitted in this case, ought not to be considered a substantial defect in the status of the mortgage as a preferred mortgage, or at least the provision should be regarded as directory and not fundamentally essential to the status of the mortgage, especially as the duty to make the endorsement on the ship's documents is placed upon the Collector of Customs and is not directly within the power of the mortgagee. And indeed some cases, decided long before the Barlum Case, have taken the view that similar provisions in the Act are directory only. See The Nanking, 292 F. 642 (D.C.Cal.1923); The Egeria, 294 F. 791 (C.C.A.9); The R. Lenahan, 10 F.Supp. 497 (D.C.Pa.); The Oconee, 280 F. 927 (D.C.Va.), and The Northern Star (D.C.) 295 F. 366; Id. (C.C.A.) 7 F.(2d) 505, reversed, 271 U.S. 552, 46 S.Ct. 589, 70 L.Ed. 1082. Libellant's counsel indeed concede, as they must, in view of Morse Dry Docks Co. v. Northern Star, 271 U.S. 552, 46 S.Ct. 589, 70 L.Ed. 1082, that the mortgage is not preferred to lienors whose claims arose before endorsement on the ship's documents, but they contend that the failure to endorse as required by subdivision (e) does not destroy the status of the mortgage as a preferred one but merely precludes its effective operation against particular lienors who have given credit to the ship prior to the endorsement. See The Henry W. Breyer, 17 F.(2d) 423, 427 (D.C.Md. 1927). Viewed as a simple mortgage without preferred status, it is doubtless true that it becomes effective, as between the parties and others having actual notice, when recorded as required by section 921; and when set up by intervention in a case where the jurisdiction of the admiralty court has originally been properly invoked, it should be given effect as a lien in accordance with its legal priority, though not a preferred mortgage under the Act. The Mariam, 66 F.(2d) 899, 900 (C.C. A.9). But it must not be forgotten that we are now dealing not with the question of priorities between rival claimants to a fund properly in the admiralty court, but with the initial question whether the jurisdiction of the Court is here properly invoked; and it is clear from the Barlum Case that it is not unless the mortgage has the preferred status in accordance with the Act.

And on further reflection it occurs to me that there is another consideration

which emphasizes the importance of the endorsement of the release rate of the non-maritime property on the ship's documents as further notice to prospective lienors of the ship. As subsequent encumbrancers on the particular vessel they may become vitally interested, through the equitable principles of subrogation or marshalling of assets, in what security the non-maritime property affords for the mortgage indebtedness in addition to the vessel on which they have the junior lien. In this aspect it may be of considerable importance to them to know that the other property may not be released from the mortgage without the payment of a stipulated portion of the mortgage debt; and thus relieve their own security *pro tanto*.

▮ Finally it must be remembered that we are dealing here solely with the jurisdiction of the court and that federal courts are of limited jurisdiction; and, while jurisdiction when it exists must be firmly exercised, it has generally been the policy of federal courts to disclaim jurisdiction where really doubtful. Here we are dealing with an extension of the jurisdiction into a field not previously occupied by congressional mandate; and there was apparently some uncertainty as to the constitutional basis for the extension at the time of the passage of the Act. To insure its validity, careful limitations were imposed to make certain that the Act would not be construed to extend beyond permissible boundaries. We are, therefore, not at liberty to disregard the limitations imposed by Congress in the Act or by a too liberal construction in effect nullify the limitations which Congress thought necessary to impose in creating the status of the preferred mortgages. As said by Chief Justice Hughes in the Barlum Case:

"If the mortgage is a preferred mortgage within the definition of the Act, jurisdiction is granted; otherwise not."

▮ I, therefore, reach the conclusion that jurisdiction does not exist in this case and therefore the libels must be dismissed. I reach this conclusion reluctantly as I am not unmindful that the main purpose of the Act was to encourage capital investment in domestic shipping, and a seemingly narrow and strict construction of even this subordinate feature of the Act may tend to impair the usefulness of the Act for its major purpose. Nor do I overlook the possible effect on other mortgages, if any, similar in their release provisions to the instant one. I am however not advised by counsel that the provisions of this particular mortgage have been customarily used in ship mortgages under the Act. In that respect it may be quite exceptional. But however this may be, the limitations of the Act must be observed by those who take the benefit of its advantages. So far as the libellant in this case is concerned, the result of dismissal of the libels apparently involves only further procedural delay in enforcing its rights under the mortgage. The validity of the mortgage as between the parties is admitted, as is also the default thereunder. No intervenors have appeared to assert prior rights to the lien of the mortgage. The question is solely where is the proper jurisdiction to foreclose the mortgage. If the question were not one purely of jurisdiction, there are ample elements of estoppel which would operate against the present contention of the mortgagor, and equitable principles which would apply in favor of the libellant. The mortgage was intended by the parties to be a preferred ship mortgage and the mortgagor covenanted to execute further assurances if necessary to make it such. But although admiralty when exercising proper jurisdiction applies equitable principles, it cannot afford equitable relief in a direct proceeding for that purpose (U. S. v. Cornell Steamboat Co., 202 U.S. 184, 194, 26 S.Ct. 648, 50 L.Ed. 987), and cannot thereby create for itself a jurisdiction which does not otherwise exist. Even the express formal consent of the parties cannot confer federal jurisdiction otherwise absent. And even though the point of lack of jurisdiction is not made by the defendant it is the duty of the court itself under the applicable federal statute to disclaim jurisdiction when it becomes apparent that it does not properly exist in the case. (U.S.C., title 28, § 80 [28 U.S.C.A. § 80]).

A word may be said as to the procedure. The cases have been submitted upon the libels and the respondent's answers and exceptions thereto. No point is made that the libellant corporation is not a qualified trustee or mortgagee under the Act. The respondent's exceptions include some points other than that of lack of jurisdiction but they have not been pressed. That the whole mortgage was not filed with the libel but only excerpts therefrom, has been met without objection by the

filing of a copy of the mortgage deed of trust. The other objection based on happenings during the pendency in this court of the proposed reorganization of the mortgagor under Bankr.Act § 77B (11 U.S.C.A. § 207) proceedings (which were finally dismissed) were abandoned in open court.

The dismissal of the case here on the ground of lack of jurisdiction only will apparently clear the way for foreclosure of the mortgage against the ships in an equity court of competent jurisdiction in the particular case. And in fact I am informed by counsel that such a case is already pending in an equity court of Baltimore City. The libellant presumably proceeded here on the assumption that as, in accordance with its contention, the deed of trust constituted a preferred ship mortgage, this court had exclusive jurisdiction as provided by the Act in such cases. For the reasons above expressed, I reach the conclusion that this court does not have jurisdiction and it would seem to result therefrom that the state court does have jurisdiction in this case, although that, of course, is a question for it to decide.

Counsel may submit the appropriate orders in accordance herewith in due course.